**Robert HICKS, individually and on behalf of all others similarly situated**

**v.**

**CROWN ZELLERBACH CORPORA-TION, the International Brotherhood of Pulp, Sulphite and Paper Mill Workers, Magic City Local No. 362, of the International Brotherhood of Pulp, Sulphite and Paper Mill Workers, Bogalusa Local 624 of the International Brotherhood of Pulp, Sulphite and Paper Mill Workers.**

**Civ. A. No. 16638.**

United States District Court,
E. D. Louisiana,
New Orleans Division.

On Preliminary Motions June 13, 1967.

On Motion for Discovery June 16, 1967.

On Motion to Amend Complaint
June 23, 1967.

Order Aug. 8, 1968.

Supplemental Order Dec. 19, 1968.

See also D.C., 310 F.Supp. 536.

Richard B. Sobol, Lolis Elie, Nils R. Douglas, Collins, Douglas & Elie, New Orleans, La., for plaintiffs and intervenors.

Michael J. Molony, Jr., Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, La., for Crown Zellerbach Corp.

C. Paul Barker, Dodd, Hirsch, Barker & Meunier, New Orleans, La., James E. Youngdahl, McMath, Leatherman, Woods & Youngdahl, Little Rock, Ark., for defendant unions.

## ON PRELIMINARY MOTIONS

HEEBE, District Judge:

In a Minute Entry dated May 29, 1967, the Court, among other rulings, denied the motion of defendant, Crown Zellerbach, to disallow a class action; ordered that the class be presently defined as the Negro employees in the Bogalusa box plant; denied in part and granted in part the motion of defendant to strike certain pleadings; and granted two, and denied at that time two, motions to intervene as plaintiffs. The Court will now issue reasons in support of, and in explanation, of those rulings listed hereinabove, since an understanding of those reasons may be helpful in further preparation for trial. It is the intention of the Court to issue an opinion in the near future which will combine an explanation of the Court's denial of the motion to dismiss and the reasons issued herein.

### REASONS

We are faced with the substantial question of the permissibility of a class action in the enforcement of Title VII of the Civil Rights Act of 1964, relating to Equal Employment Opportunities, and more particularly with regard to § 706 (e) of that Act, 42 U.S.C.A. § 2000e–5 (e). Plaintiff, who has properly exhausted his administrative remedies,[1] seeks to enlarge his authorized civil action against his employer into a class action in accordance with Rule 23, F.R.Civ. P. The defendant employer opposes the class action, arguing first, that the enforcement provisions of Title VII do not contemplate or authorize a class action, and second, that even if class actions are generally permissible under Title VII, plaintiff cannot comply with the requirements of Rule 23.

We dispose of the second argument first. Defendants' main contention seems to be that the prerequisites of Rule 23(a) (2) that there be questions of law or fact common to the class are not satisfied in that each member of the class will be in factually different circumstances as to seniority, ability, job position, etc., and thus company action as to each will have been based on varying factors. Defendant regards plaintiff as an employee with a certain amount of seniority who sought and was denied promotion from "take-off man" to "slitter man," and fails to see how this plaintiff can represent other men in other positions in different factual circumstances —defendant claims that the class action is improper because each member of the class will have to present his particular problem to the Court.

In so arguing, defendant misinterprets the thrust of the proposed class action. The class action is not sought in order to bring in many different factual grievances; rather, it seeks to put the Court in position to render a broad remedial order in the event that the defendant has an established discriminatory policy or policies which operate as to all Negroes, *apart from and regardless of* the individual circumstances of each. Thus, the existence and operation of a pervasive

1. Our Minute Entry of May 29, 1967, so held; the opinion to be issued shortly will explain that holding.

policy affecting all Negroes is the question of law or fact common to all members of the class. The elimination of a discriminatory policy would not affect the employer's right to deal with each person individually on the basis of circumstances peculiar to that person. Thus, if it is proven that there are "white jobs" and "Negro jobs," the Court would be unconcerned with which men in which jobs should be transferred or promoted, but the racial classification of jobs and the racial barrier to particular jobs would have to be eliminated; or, if it is proven that the tests given those seeking certain positions are designed to discriminate against Negroes, the tests would have to be eliminated, but the employer would remain free to consider each person on his individual merit or seniority. Under this appreciation of the class action, the objection based on the differing status of each member of the class does not negate there being questions of law and fact common to the class.

██ Defendant also argued that the requirements of Rule 23(b) (2) that the defendant has acted or has refused to act on grounds generally applicable to the class cannot be met here because the defendant has "long taken an affirmative stand against racial discrimination in employment." We hardly need state that while this argument may prove to be well taken on the merits, it is completely frivolous as a ground for disallowing a class action which alleges a policy of racial discrimination. If there is no general policy or practice which has the effect of discriminating racially, then the relief sought by the class *qua* class will be denied and, as explained more fully in footnote 4, infra, the members of the class will not be permitted to seek relief against acts of discrimination affecting them only as individuals.

We conclude, on the basis of our knowledge of the issues, that all the prerequisites to a class action listed in Rule 23 (a) are met here, and further that the issues presented by the allegations are such that the class action is maintainable under Rule 23(b) (2).[2] Since the Federal Rules "govern the procedure * * * in all suits * * * with the exceptions stated in Rule 81," Rule 1, a class action is proper unless Title VII does not authorize or prohibits class actions in the enforcement of its provisions.

██ Although Title VII does not expressly provide for class actions and, in fact, provides that suit may be brought only by "the person * * * aggrieved" who has filed a charge with the Equal Employment Opportunity Commission, we think that reasonable interpretation and sensible administration of the Act require that class actions be permitted under appropriate circumstances, that is, where the alleged violations complained of to the Commission are of a general nature and raise issues which are not restricted to the one person who sought the aid of the Commission.

We believe an analysis of the statutory scheme for securing equal employment opportunities demands that conclusion. The statute provides for the filing of a charge by an allegedly aggrieved person with the Equal Employment Opportunity Commission. Section 706(a) of the Act, 42 U.S.C.A. Section 2000e–5(a). The Commission has no power to coerce employers into compliance with the provisions of the Act; rather, the Act contemplates and provides for conciliation efforts by the Commission with the aim of securing voluntary compliance on the part of the employer. Thus, the above-mentioned section provides that the Commission "shall endeavor to eliminate any such alleged unlawful employment prac-

2. In fact the Note of the Advisory Committee, accompanying the amendments effective July 1, 1966, cites as illustrative of the intended reach of Rule 23(b) (2)

"various actions in the civil-rights field where a party is charged with discriminating unlawfully against a class."

tice by informal methods of conference, conciliation, and persuasion." If the conciliation efforts are unsuccessful, suit may be brought by the aggrieved person. Section 706(e) of the Act, 42 U.S.C.A. Section 2000e–5(e).

We turn our attention first to a charge filed by an allegedly aggrieved person. The charge is filed because an individual feels that rights given him by the Act have been denied him by his employer. Undoubtedly, the complainant is mainly, and perhaps solely, concerned with the effect that denial has upon him personally. However, where the denial of rights alleged by the complainant would appear to arise from the policy of an employer which has widespread application and would affect other persons, in addition to the complainant, it is not conceivable that Congress intended the conciliation efforts to be directed solely at obtaining agreement by the employer to grant to the individual complainant his statutory rights. Rather, it would seem beyond dispute that Congress intended the Commission to address its conciliation efforts to the rectification of the general policy enforced by the employer. The very proceeding before us presents a simple but illustrative example. One of complainant's allegations before the Commission was that locker facilities at the Crown Zellerbach plant were segregated by race. It would border on the ridiculous for the Commission's conciliation efforts to be directed solely at securing for the complainant a locker amidst those occupied by the white employees— it is obvious that the Commission would direct its efforts at the elimination of the company policy establishing racially segregated locker facilities for all its employees. Thus, a charge filed by an individual asserting an unlawful employment practice as to him can, under appropriate circumstances, serve as a vehicle to bring to the Commission's attention an allegedly unlawful general policy of the employer, and the scope of the Commission's conciliation efforts would broaden from the individual grievance to the overall policy.

The focus of the statute then shifts from conciliation to coercion. If the Commission's efforts are unsuccessful, the aggrieved person may file a civil action. The framers of the statute envisioned and required that the judicial remedy could not be sought until the employer, urged on by the Commission, had an opportunity to voluntarily comply with the provisions of the Act and had refused.[3] With this in mind, we now turn our attention to the issue before us: if it becomes necessary that there be recourse to the courts, what is the nature and scope of the relief that the court can grant? The statute does speak of a suit brought by "the person aggrieved," and counsel for the employer suggests that this evinces a Congressional policy against a class action. However, we look at the complaint in the same light that we believe the Commission should—the suit brought by an individual who has exhausted his administrative remedy may raise broad issues concerning general employer policy. If the charges are proven true, we would then grant

3. The Act provides that "if within [60] days after a charge is filed with the Commission * * * the Commission has been unable to obtain voluntary compliance * * * a civil action may * * * be brought * * *." and thereby establishes inability to obtain voluntary compliance as a prerequisite to suit. The only court to have considered the precise issue has seen so much stress in the legislative history of the Act on the opportunity to voluntarily comply that it held suit may not be brought if the failure to obtain voluntary compliance within 60 days was due to the Commission's being unable to process the charge because of its heavy caseload—that court stated, in substance, that there must be *attempts* to persuade the employer into voluntary compliance before it can be said that the statutory prerequisite of *inability* to obtain voluntary compliance is met. Dent v. St. Louis-San Francisco Railway Co., 265 F.Supp. 56 (N.D.Ala.1967).

such relief as is authorized by the statute. For purposes of this analysis, we can simply dichotomize the possibilities: either the statute authorizes us to grant relief only to the individual complainant, or it authorizes us to strike down the general policy. In determining which possibility was intended by Congress, we need look only to the effect of each possibility with regard to the administration and remedial purpose of the statute. If we grant relief only to the individual, then any other individual affected by the proven discriminatory policy would still have to process his own complaint to the Commission and the courts, thus creating a totally unnecessary administrative and judicial burden. Of course it is possible that, once a decision were rendered by the Court as to the individual complainant, the employer would voluntarily conform its policies to that decision, but if this were to be true, then there should be no real objection to the class action initially.

On the other hand, if we were to strike down the discriminatory policy as a whole, we would not violate the policy established by Congress that conciliation must precede coercion, and that voluntary compliance is to be preferred to involuntary. As we have stated, the Commission's conciliation efforts are undoubtedly directed to the overall eradication of the discriminatory employer policies. At that time the employer has the opportunity to comply with the provisions of the Act as to the individual and as to all the issues he raised. Where the employer has refused that opportunity, we feel safe in assuming that if all the other individuals who might raise those same issues filed complaints with the Commission, the employer would still refuse to voluntarily comply with the Act. Once the administrative remedy has been fairly exhausted by one person as to an issue, we see absolutely no need, and in fact see only wasted effort, in requiring that before the Court act broadly as to that issue, every person affected thereby initiate and prosecute a complaint which will not be successful. Not requiring these certainly purposeless administrative proceedings deprives the employer of nothing—he cannot be heard to say that he might have decided to bow to the persuasive powers of the Commission if other complaints had been filed, for the opportunity to voluntarily comply was not only presented once and refused, but remains always open during the pendency of the judicial proceedings.

■ Based on this reasoning, we believe that when the judicial stage of the statutory enforcement scheme is reached, sound administration of the statute requires, in the absence of forbidding statutory language, that the Court consider the suit, not from the standpoint of the individual before it, but rather from the standpoint of the issues that individual has unsuccessfully presented to the Commission. The Court should then proceed to act on those issues, and not just as to the individual.

■ Once we conclude that proper judicial action requires this broad approach, it follows that the vehicle for that approach is a class action wherein all those claiming deprivations of their rights to equal employment opportunities, who raise the same issues as those raised by the individual petitioner, may have those rights vindicated.[4] This re-

---

4. We wish to reemphasize that the effect of our conclusion is to use the class action device to permit the Court to render general relief to all members of the class rather than to only one individual; that general relief must be limited to the issues raised by the individual who exhausted his administrative remedy, and those members of the class who did not process a charge through the Commission will not be permitted to raise any other issues or problems or seek any relief peculiar to themselves. Thus, the Act's emphasis on conciliation and voluntary compliance will not be subverted or avoided by those members of the class.

sult, reached by our analysis here, is the same as that reached in Hall v. Werthan Bag Corp., 251 F.Supp. 184 (M.D.Tenn. 1966), where the Court pointed out, at 186, that "Racial discrimination is by definition a class discrimination," and concluded, at 188, that a class action was proper as to the broad injunctive relief sought, as "the purpose of the requirement of resort to the Commission has already been served," but the scope of any ancillary relief, such as back pay or reinstatement, rectifying the purely personal injuries should be limited to the single employee who had sought the aid of the Commission.[5]

We find further support for our decision here in the Fifth Circuit's answer to a similar argument against the validity of a class action under a different title of the Civil Rights Act of 1964, Title II, which contains the Public Accommodations provisions. In that Title, Section 204 of the Act, 42 U.S.C.A. Section 2000a–3(a), provides for civil actions by "the person aggrieved" where the statutory right to equal enjoyment of the facilities of places of public accommodation has been denied. In Lance v. Plummer, 353 F.2d 585, 590–591 (5th Cir. 1965), cert. den. 384 U.S. 929, 86 S.Ct. 1380, 16 L.Ed.2d 532 (1966), reh. den. 384 U.S. 994, 86 S.Ct. 1885, 16 L. Ed.2d 1011 (1966), the Court held that a class action was proper under that statutory language, which is the same as the language before us.

■ In addition to these judicial decisions, the Commission itself has decided that class actions are proper. Opinion Letter, Feb. 3, 1966, see CCH Employment Practices Guide, E.E.O.C. Legal Interpretations, ¶ 17,252.32, p. 7371. This interpretation of the statute by the Commission is not conclusive on us, and we base our decision on our own analysis of the statute, but the respect and weight to be accorded the Commission's view, see discussion in International Chemical Workers Union v. Planters Manufacturing Co., 259 F.Supp. 365, 366–367 (N.D. Miss.1966), lends our decision strong support.[6]

5. Defendant's attempts to distinguish *Hall* from the case before us are without merit. The first asserted ground is the result of the failure to recognize plaintiffs' allegations of discriminatory policy of widespread application, see ¶¶ 2–3 of these reasons; the second attempts to rely on the argument, which failed, that plaintiff had not exhausted his administrative remedies—this argument goes only to dismissal of the action and is totally unrelated to the propriety of a class action or a distinction between *Hall* and this case; the third begs the question, see ¶ 4 of these reasons.

The case before us is to be distinguished from Jenkins v. United Gas Corp., 261 F.Supp. 762 (E.D.Tex.1966). In that matter, one employee had sought relief before the Commission, and, failing there, attempted to bring a class action against the employer. After suit was filed, the plaintiff was promoted, and the defendant suggested that the plaintiff's cause of action was thus mooted. The Court, basing its conclusion on the statute's emphasis upon voluntary compliance, concluded that the cause of action was moot. Thereupon, the Court also dismissed the class action. However, the dismissal of the class action was based on the finding that there was no common question of fact as to all the Negro employees. The Court's opinion in no way intimates that class actions would never be proper in the enforcement of Title VII, and in fact, states that "it seems that these actions will be allowed in some cases"; thus, that opinion merely holds that the issues raised by that particular plaintiff will not support a class action.

6. The respect and weight to be accorded the Commission's view as to the issue before us is somewhat less than might be given to other opinions of the Commission, for the issue before us is not one with which the Commission is directly concerned in its administration of the statute—the issue is purely one of procedure before the Court—and to that extent the Commission's opinion on this question should be accorded less respect and weight than is accorded the Commission's view as to questions concerning interpretation of the statute where the administration of the provision in question is within the Commission's province.

■ It is therefore our opinion that there is nothing in the statute to preclude a class action,[7] and that a class action is well suited and eminently proper to the administration of the statute, in those cases whose posture is such, as we have discussed *supra*, that the requirements of Rule 23, F.R.Civ.P., can be and are met.

The next problem requiring resolution is the scope of the class. We believe it consistent with, and required by, our analysis of this problem to state that the scope of the class might well differ with the nature of each issue raised by the complainant—as to each issue concerned with a general employer policy, the class will consist of all those individuals who would be directly affected by a resolution of that issue and who could have presented that same issue to the Commission.

To the extent that the Court may not definitely know, on the basis of the pleadings and pre-trial procedures, which individuals are in fact within the purview of each issue raised, the class may not be accurately and properly definable until all the evidence is in. Fairness to the attorneys in their planning and preparation for trial might then demand that prior to trial the class be tentatively defined as broadly as the evidence may conceivably prove it to be; after the evidence is in, the Court could then narrow the class to be affected by the decision rendered.

■ On the basis of the pleadings now before us and our limited knowledge of the facts involved, it is our conclusion that, in order that the attorneys may have some guidance in their preparation for trial, the class should now be tentatively defined as the Negro employees of the Bogalusa box plant. As to the "lines of progression" issue, which deals with job classification and promotion, it may well be that a smaller class would be proper; as to the "testing" issue, which deals with tests given applicants for promotion and employment, it may well be that a larger class would be proper. Further pre-trial procedures should enable us to further refine our definition, subject to, as stated *supra*, the possibility of decreasing the scope of the class after the evidence is presented.

\* \* \*

■ Our holdings as to the propriety of the class action and the scope of the class greatly simplify resolution of the motions to intervene. Elmer Rodgers and Albert Z. Young have not exhausted their administrative remedies, but they fall within our tentative definition of the scope of the class. Here, the proposed intervenors are represented by the same attorney as the plaintiff, and they cannot raise any issues peculiar to themselves but are limited to assisting in the conduct of the suit as to the general issues raised by plaintiff, see footnote 4, *supra*,—to allow intervention for any purpose beyond that would be to ignore the Act's insistence on attempted concili-

7. We find no merit in the negative inference drawn by defendant that the authority granted by § 707 of the Act, 42 U.S.C.A. § 2000e-6, to the Attorney General to sue where there is "a pattern or practice of resistance to the full enjoyment of any of the rights secured," impliedly negates the propriety of a class action. A statutory right could certainly be created which would be substantively limited so as to preclude a class action, but negative inference or implication is not sufficient to warrant a holding of the inapplicability of one of the Federal Rules. In order to draw that negative inference, we would have to find in the statute, or its legislative history, some indication that Congress felt there was no room or need for coexistence of private class actions with the public suits to be brought by the Attorney General. It is apparent that the two types of suit do not conflict with each other, and it does not take much imagination to envision situations in which the private class action may be preferred to and offer advantages over the public suit. Thus, we decline to draw the negative inference suggested by defendant.

ation by the Commission and the opportunity for the employer to voluntarily comply. Apparently, therefore, they cannot intervene as of right under Rule 24(a) (2) as amended, because their only interest is precisely that of the existing parties, and the adequacy of representation is unaffected where the same counsel is involved. These attempted interventions then are permissive, under Rule 24(b) (2); although the question is largely academic, in our discretion the motions to intervene are granted.

■ Vincent Plant and Luther Magee have not exhausted their administrative remedy[8] and are not within our tentative definition of the scope of the class. Therefore, their motions to intervene are not proper under either of the Rule 24 classifications, and must be denied at this time, without prejudice to their being reurged if the scope of the class is redefined prior to trial.

\* \* \*

■ Resolution of the motion to strike also becomes greatly simplified by our resolution of the class action issue. Plaintiff did not oppose the motion insofar as it was directed at ¶ 1(b) of the original complaint and ¶ 1 of the amended complaint. Insofar as the motion to strike was directed at ¶¶ 3, 7, 8(b), 10, 11, 12, 13 and 14, it rested on the argument that a class action could not be maintained, and thus must be denied as to those paragraphs. As to ¶ 8(a) and the first sentence of ¶ 15 of the complaint, the motion to strike urges that these paragraphs allege occurrences that happened prior to the passage and effective date of the Equal Employment Opportunity provisions. Plaintiff, on the other hand, claims that they present essential background information for a clear understanding of all the factual and legal issues involved in the suit. It is abundantly clear that no remedy for those occurrences, which may be felt to have been injustices, can be granted because none of the acts alleged to have occurred were illegal prior to the passage of the statute, and defendant need not fear that we would impose any sanctions even if he did engage in such acts. However, plaintiff may be correct in his assertion that knowledge of past conditions at the plant is necessary to an understanding of the discriminatory effects of action or inaction after the effective date of the statute. This being a nonjury case, we need be little concerned with any possible prejudicial effect of any evidence presented in support of these allegations. Therefore, the motion to strike must be denied, except insofar as plaintiff has consented to its being granted.

## ON MOTION FOR DISCOVERY

This cause came on for hearing on a former day on motion of defendant Crown Zellerbach to compel plaintiff to permit discovery. Having studied the briefs submitted and having heard the arguments of counsel, the Court took the matter under submission for the purpose of further examining the record to ascertain precisely which issues remain in the case. The Court is now ready to rule.

It is ordered that the motion of defendant Crown Zellerbach to compel plaintiff to permit discovery be, and the same is hereby, denied.

---

8. We are told by counsel for defendant that Plant and Magee filed charges with the Commission but failed to file suit after receiving notification from the Commission that it had been unable to secure voluntary compliance. Defendant argues that permitting them to join in this action would allow them to avoid the effect of the thirty-day limitation period within which suit can be brought. We deny the motions to intervene on other grounds, but feel it proper to note here that since their intervention in the suit would be of a limited nature and they would be unable to raise any issues peculiar to themselves, the limitation period in the Act would be given full effect as to any such issues; however, the Court would not be prevented from rendering any relief to the intervenors as a result of its ruling on the issues raised by plaintiff.

## REASONS

Defendant seeks to compel the testimony of plaintiff by deposition upon oral examination. Plaintiff refused to answer questions in three general areas. Our comments with regard to our resolution of the issues involved in each of the three areas are made with the understanding that at the time the deposition was taken, counsel did not have our Minute Entry dated May 29, 1967, in which we ruled on several pending motions, and our Minute Entry of June 13, 1967, in which we issued our reasons in support of all but one of those rulings, nor our opinion in support of the denial of the motion to dismiss, which is now in the final stages of preparation.

Rule 26(b) provides that

"The deponent may be examined regarding any matter * * * which is relevant to the subject matter involved in the pending action * * *. It is not ground for objection that the testimony will be inadmissible at the trial if the testimony sought appears reasonably calculated to lead to the discovery of admissible evidence."

Our rulings and reasons on the previous motions have, to a great extent, determined which matters are relevant within the meaning of the rule.

The objected-to inquiries requested information concerning three separate areas:

1—The jobs plaintiff has held and the duties of those jobs;

2—The tests taken by plaintiff, other than those given by the defendant;

3—Information on the several charges filed by plaintiff with the EEOC.

* * *

Our Minute Entry of June 13, 1967, page 187, explains our view of the nature of the action brought by plaintiff. Counsel for plaintiff has consistently stated that he does not seek in this action promotion or transfer for the plaintiff. Essentially, all he seeks is to insure that when plaintiff *does* apply for promotion or transfer, his application will not be considered under, and his opportunity for advancement limited by, racially discriminatory policies which consign Negroes to the formerly-Negro line of progression. The relevant inquiry, then, will be concerned with the relationship of each job to the other jobs and with the nature of the work done in the performance of each job, in order that it may be determined whether the conditions and limitations placed upon promotion or transfer are racially discriminatory rather than required by the inherent nature of the jobs. Under this view of the case, plaintiff's prior work experience is totally irrelevant.[1] The company is well aware of the duties required in the performance of each of the jobs in the plant, and this is the relevant inquiry. Since defendant has not shown us in what way the information sought to be elicited could possibly be relevant in the posture of this case, discovery cannot be compelled.

* * *

Defendant seeks information about prior tests that plaintiff may have taken. Counsel for plaintiff has informed the Court, see memorandum in support of motion to amend, that the issue of unfair administration and grading of the tests, raised in the original complaint, will not be pressed at trial since satisfactory changes in these practices were made by the company after the initiation of this action. As we understand the posture of the case, the only issues concerning tests are whether the tests are given to only certain classes of employees and whether that classification is racially discriminatory, and further, whether the test itself contains a racial bias and/or is unrelated to ability to perform the functions required by the job for which the test is a require-

---

1. It is, of course, relevant to any decision by the company as to its treatment of plaintiff or any employee; it is simply irrelevant to the issues in this case.

ment. The revelant inquiry, then, is concerned with the test's inherent nature, its purpose, and those to whom it is given.

Defendant argued that on the trial of the case, in order to show the propriety of the test, the company will be entitled to compare the procedures at Crown Zellerbach with the procedures at other companies in the industry, and so defendant asked plaintiff what other tests he took in order to obtain from him information concerning what other companies in the industry use these tests. It may well be that a showing that the test is generally accepted and widely used will be a factor relevant to a decision on whether the test is job-related, and ordinarily, a person using discovery procedures can seek information in whatever way and from whomever he deems best. Here, however, it cannot be seriously urged that defendant needs or seeks *plaintiff's* knowledge of industry practice. The inquiry would have been relevant to the issue of unfair grading or administration of the test, but that issue is no longer in the case and the relevance of the inquiry has disappeared.

\* \* \*

Defendant sought information from plaintiff concerning the several charges plaintiff filed with the Commission. Plaintiff's previous amendment to the complaint (Doc. No. 30 of Record), clearly indicates, and plaintiff's counsel has repeatedly stated, that the basis for this suit is the charge filed with the EEOC on March 16, 1966. Since that charge is the basis for this Court's jurisdiction, defendant is entitled, and indeed the Court would encourage him, to inquire into the nature of *that* charge in order that the propriety of the complaint instituting this action may be determined. However, the irrelevance of any charges filed *subsequent* to the March 16 charge is so obvious as to need no discussion, and the opinion we are preparing concerning defendant's motion to dismiss will indicate our view that the March 16 charge is proper regardless of whether *previous* charges were filed. More specifically, with regard to this discovery motion, it is clear that if previous charges with the Commission contained *different* allegations than the March 16 charge, the March 16 charge is not even arguably improper, and the opinion will demonstrate that, even if the March 16 charge was *identical* to previous charges, the March 16 charge is proper so long as the procedural requisites of the statute, particularly the ninety-day period within which the charge may be filed, are satisfied as to it. Therefore, no purpose can be served by an inquiry into the nature of any previous or subsequent charges since the March 16 charge is properly filed regardless of the substance of any other charges.

### ON MOTION TO AMEND COMPLAINT

This cause was scheduled for hearing on June 20, 1967, on the motion of plaintiff to amend the complaint. Due to the need for an open and full discussion of the matter, in view of the trial of this matter being set for June 26, 1967, a conference was held by consent of all counsel and the matter was taken up in chambers. However, in view of the fact that this matter was not formally discussed, counsel will be permitted, prior to the taking of evidence at the trial of this case on June 26, to make for the record any formal objections they may have to these rulings.

Plaintiff has moved to amend the complaint by substituting for the original complaint and previous amendments thereto made by the parties and the Court, a single amended complaint.

Plaintiffs' memorandum in support of his motion to amend states four reasons for the substitution of the new amended complaint: (1) to consolidate into one document the matter presently contained in five separate documents, including the original complaint, two amendments

thereto previously made by plaintiff, and certain orders of the Court modifying the complaint pursuant to motions to strike made by defendant Crown Zellerbach; (2) to delete allegations made in the original complaint which plaintiff no longer presses in view of recent compromise with, or unilateral action by, the defendant Crown Zellerbach; (3) to clarify and crystalize several confusing and ambiguous allegations in the original complaint; and (4) to enlarge the class of parties plaintiff in this action to include persons not included within the class previously defined by the Court in its minute entries dated May 29 and June 13, 1967.

Certainly defendants cannot quarrel with the first three reasons supporting the amendment. If the substitution accomplishes these things, consolidates, deletes and clarifies, then it works no prejudice to defendants' case and will greatly facilitate the trial of the case for all parties as well as the Court.

Defendants' primary objection, and we think their only objection of any serious nature to the amendment is directed to the proposed enlargement of the class of parties plaintiff beyond that previously defined in the Court's minute entry of May 29, 1967, wherein the class was *"presently defined as the Negro employees in the Bogalusa box plant."* (emphasis added). Plaintiffs' proposed amended complaint would define the class, with respect to the issue of testing only, as "comprised of all Negro employees at the box plant * * * *and* of all prospective Negro applicants for employment at any plants operated by Crown in Bogalusa."

The Court's previous determination of the scope of the class was made pursuant to new Rule 23(c) (1) of the Federal Rules of Civil Procedure, which states:

"As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained. An order under this subdivision may be conditional, and may be altered or amended before the decision on the merits."

The previous definition of the class was made with specific cognizance of new Rule 23 and was fully intended by the Court to be "conditional" (see the minute entry dated June 13, 1967); the defendants were, or should have been, on notice that the determination of the class on May 29 was for *present* convenience, and, as indicated in the June 13, 1967, entry, page 191, subject to adjustment or amendment prior to trial. Both plaintiffs and defendants seem to have treated plaintiffs' motion to amend, with respect to the issue of enlargement of the class, as a motion for amendment of pleading under Rule 15 (a). We, however, have treated the motion to amend, with respect to that issue, as a motion directed to the Court to "alter or amend" its provisional determination of the scope of the class pursuant to Rule 23(c) (1). Were this aspect of the motion to amend treated as a motion to amend the complaint, and were the amendment allowed, no change whatsoever would be effected in the Court's order of May 29 wherein the class is defined; under new Rule 23, the actual definition of the class remains the prerogative of the Court, for which any allegation of plaintiffs as to the scope of the class serves only as "raw material." [1] The defendants do not seriously argue that a redefinition of the class is not within this Court's discretion,[2] either

---

1. The class asserted by plaintiffs should serve as the starting point for the definitive fixing of the class by the Court under Rule 23(c) (1).

2. The reasonable interpretation of new Rule 23(c) (1) is that the Court has the

duty to modify the scope of the class named in the complaint for the sake of fairness to all parties; but this would not include the power to enlarge the class beyond that actually asserted by a plaintiff.

pursuant to new Rule 23 or under Rule 15(a); but the defendants are understandably concerned about the possible prejudice to their case by the inclusion within the class of additional members so shortly before trial, and the new issue which may thereby be presented and for the defense of which they assert they are unprepared. We can appreciate the respective positions of both plaintiffs and defendants on this question, and we therefore issue the following order:

We hereby grant what we consider to be the motion of plaintiffs for amendment of our previous order by adding to the class of parties plaintiff all present and prospective Negro applicants for employment at the Bogalusa Box Plant, *with the qualification that this enlargement of the class is allowed only with reference to the specific issues of discriminatory testing already before the Court under the Court's previous definition of the class on May 29, 1967.*

We render this order under the authority of new Rule 23(c) (4) (A) which states:

> "When appropriate an action may be brought or maintained as a class action with respect to particular issues * * *."

We believe defendants' opposition to the enlargement of the class under the foregoing order to be occasioned by a misunderstanding of both new Rule 23(c) (4) (A) and the order. We do not intend to, nor do we in any way enlarge or add to the *specific issues* already before us under our previous definition of the class as "the Negro employees in the Bogalusa Box Plant"; by today's order we merely enlarge the res judicata effects of whatever decision we may reach with respect to the same issues previously before us. Any issue not present under our prior definition of the class will not be considered under the amended definition. In effect, Negro applicants for employment are admitted to the class of parties plaintiff here *only insofar* as they rely on issues common to Negro employees at the Bogalusa Box Plant as well. The explanation of exactly what our order entails, and the considerations under Rule 23 and Title VII of the Civil Rights Act of 1964 which influence it, has already been set out extensively in the Court's minute entry of June 13, 1967.

Thus, should we find that the tests given applicants are not the same tests given to employees seeking advancement, we would have to rule out at the trial any consideration of the tests given to the applicants, insofar as they are different in any way from the tests given the employees. Again, we could not, under our foregoing order, consider any question relating to the invalidity of tests given to applicants except insofar as the reasons for the invalidity are shown by plaintiffs to be exactly the same as would invalidate the tests as administered to employees. To reiterate— by the foregoing order enlarging the class of parties plaintiff, we allow no enlargement whatsoever of the specific issues previously before us. The Court believes this very narrow enlargement of the class is more than adequate protection for defendants. Defendants cannot be prejudiced by such an enlargement of our previous conditional definition of the class; since no new issues may be presented, defendants' preparation for trial has been in no way prejudiced.[3]

Apart from the change in ¶ 3 of the complaint, which we have treated as a motion for modification of the Court's order of May 29 defining the class, and with respect to the totality of the pro posed amended complaint, we see no rea ·

---

3. In actuality, the only persons who could conceivably be adversely affected by the enlargement are those additional members now part of the class of parties plaintiff. We specifically find that the original representative parties plaintiff can and will fairly and adequately protect the interests of the entire class as herein defined.

son not to allow it to be filed. At the conference held in lieu of formal hearing on the motion to amend, counsel for defendants' only objection was directed to the possibility that new issues might be presented by the inclusion of applicants for employment in the class of parties plaintiff. In view of the foregoing definition of the class, we see no merit to counsel's objections. We have carefully examined the proposed amended complaint and we find therein no substantial or prejudicial departure from the allegations of the original complaint (with previous amendments and modifications thereof) other than consolidation of what has gone before, deletion of irrelevant and abandoned allegations, and clarification of formerly ambiguous language.

The motion of plaintiffs to amend by substituting the amended complaint is therefore granted. If defendants have some remaining objection to any matter in the proposed amended complaint they may, as stated above, present them for the record prior to the taking of evidence at the trial. In addition, the defendants are specifically excused from filing answers to the amended complaint, and if they do not file answers, such failure shall be considered a general denial of all allegations of plaintiffs' amended complaint. Finally, the Court states that it intends to take into account all the prior pleadings of the defendants and to consider those pleadings as responsive to the amended complaint.

### ORDER

This cause having come on for hearing on a previous day on the merits of the complaint of the plaintiffs, and it appearing that plaintiffs should now be afforded relief on one of the issues presented by their complaint, pending a determination by the Court of the remaining issues in this cause, and there being no just reason for a delayed decision on the issue now being disposed of,

It is the order of the Court that, for the reasons assigned, relief is hereby granted to the following extent:

■ The defendants, Crown Zellerbach Corporation, Local 362, International Brotherhood of Pulp, Sulphite and Papermill Workers, AFL-CIO, and the International Brotherhood of Pulp, Sulphite and Papermill Workers, AFL-CIO, their officers, agents, employees, servants and all persons and all organizations in active concert or participation with them, are hereby permanently enjoined and restrained from discriminating against the Negro employees of the defendant Crown Zellerbach Corporation's box plant in Bogalusa, Louisiana, in violation of Title VII of the Civil Rights Act of 1964, and in particular, the defendants are hereby ordered to abolish forthwith the system, presently in force at the said box plant, by which employees in a position to compete for promotion to vacant job slots in a particular line of progression are awarded promotions on the basis of "job seniority," and any other seniority system designed to discriminate against the Negro employees at said plant or having the effect of so discriminating, insofar as such "job seniority" or other systems apply to the promotion, demotion, or selection for training of Negro employees hired prior to April 7, 1964, in competition with employees of the opposite race; and the said defendants are ordered to establish, with respect to such promotions, demotions and selection for training, and in the place of such "job seniority" or similar systems, a system of "plant seniority" as follows:

(1) Total plant seniority (i. e., the length of continuous service in the box plant) alone shall determine who the "senior" bidder or employee is for the purposes of permanent or thirty-day promotions, or for purposes of demotion, in all circumstances in which one or more of the competing employees is a Negro employee hired prior to April 7, 1964;

(2) For jobs which operate only one shift per day, promotions or assignments from the unassigned groups to fill casual or vacation vacancies will be made on the same basis as permanent and thirty-day promotions;

(3) For jobs which operate more than one shift per day, promotions because of casual or vacation vacancies, or assignments from the unassigned groups because of casual or vacation vacancies, will be awarded to the senior (as determined in (1) above) qualified man on the shift and/or machine where the vacancy exists;

(4) Promotions and demotions above shall not affect persons who have formal written waivers in effect at that time. Persons promoted shall go around a waived position in any job slot, and persons demoted shall likewise go around such a position on the way down;

(5) Qualified employees shall be selected for training on the same basis as for promotion described above.

The provisions of this decree pertaining to the implementation by the defendants of a system of "plant seniority" shall be placed into effect within ten days from the entry of this order.

### REASONS

The legal principles on which this order is based are substantially identical to those which formed a basis for the injunction entered by this Court in the case of United States v. Local 189, United Papermakers and Paperworkers, AFL-CIO, CLC, et al., 282 F.Supp. 39 (E.D.La.1968).

The findings of fact upon which this order is based are these:

(1) The defendant, Crown Zellerbach Corporation, and the defendant unions Local 362, International Brotherhood of Pulp, Sulphite, and Papermill Workers, AFL-CIO, and the International Brotherhood of Pulp, Sulphite and Papermill Workers, AFL-CIO, actively engaged, prior to April 7, 1964, in a pervasive pattern of discrimination against the Negro employees at Crown's Bogalusa box plant with respect to employment opportunities or promotion, demotion and selection for training;

(2) That, in furtherance of said discrimination, Negro employees at the defendant Crown's Bogalusa box plant were forced into the inferior lines of progression and the less desirable jobs;

(3) That the continuation of the "job seniority" system, or any seniority system which incorporates job seniority as a substantial factor in promotion, demotion and selection for training, operates, because of the situation engendered by the pervasive past discrimination by the defendants at Crown's Bogalusa box plant, to effectively presently discriminate against Negro employees at the plant, whenever Negro employees hired prior to April 7, 1964, compete against white employees for promotion, demotion, or selection for training;

(4) That a system of "plant seniority," as defined in the collective bargaining agreement between Crown and the defendant unions presently in force at the box plant, would not have such a continuing discriminatory effect against the Negro employees;

(5) That "job seniority," as a consideration in the promotion and demotion of employees within a particular line of progression and in the selection of employees for training, is not necessitated by safety or efficiency factors, nor for any other reason is "job seniority" objectively a better or more desirable basis than "plant seniority" for promotion, demotion, or selection for training for employees within the context of the present lines of progression in force at Crown's Bogalusa box plant.

In addition, the determination that the plaintiff should be afforded relief under the foregoing order, pending a determination of the other issues in this case, is made on the finding that, in view of the situation now prevailing in Boga-

lusa, Louisiana, and in particular the fact that relief similar to that granted in the foregoing order has already been granted and is presently in force at the defendant Crown Zellerbach Corporation's Bogalusa paper mill, there is no just reason for the delay of similar relief for the plaintiffs in this case with respect to the defendant Crown's Bogalusa box plant.

### SUPPLEMENTAL ORDER

Upon consideration of plaintiff's motion for preliminary injunction and after hearing oral argument by attorneys for the plaintiff and for the defendant Crown Zellerbach Corporation, and it appearing that defendant Crown Zellerbach Corporation will, unless immediately restrained, fill a single relief slitterman position on the 0201 Corrugator at its Box Plant in Bogalusa, pursuant to the terms of the collective bargaining agreement in effect at the plant, and it further appearing that the plaintiff, as well as amicus curiae, the Equal Employment Opportunity Commission, has contended that Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e requires the merger of the Corrugator Rod and Take Off Group with the Corrugator Group, and it further appearing that if the position of relief slitterman 0201 is now filled on the basis of the current collective bargaining agreement, it may well be awarded to an employee outside the Corrugator Rod and Take Off Group, and it further appearing that in such event the Negro employees in the Corrugator Rod and Take Off Group may suffer irreparable injury,

It is ordered that defendant Crown Zellerbach Corporation be, and hereby is, enjoined from awarding a position as relief slitterman on the 0201 Corrugator to any person other than the senior applicant in the Corrugator Rod and Take Off Group pending final determination of this cause, *provided however*, that the company may train the senior applicant in the Corrugator Rod and Take Off Group for the relief slitterman position on the 0201 Corrugator, without prejudice to its right to refuse to permanently award said position to said applicant in the event that the legality of the current collective bargaining agreement is ultimately sustained by this Court and another employee would be entitled to preference in filling this position.