Cecilia **ESPINOZA** et vir.

v.

**FARAH MFG. CO., Inc.**

**SA–70–CA–353.**

United States District Court,
W. D. Texas,
San Antonio Division.

Sept. 21, 1971.

Ruben Montemayor, San Antonio, Tex., for plaintiffs.

William Duncan, Kemp, Smith, White, Duncan & Hammond, El Paso, Tex., and Thomas H. Sharp, Jr., Groce, Hebdon, Fahey & Smith, San Antonio, Tex., for defendant.

## MEMORANDUM OF DECISION

SUTTLE, District Judge.

This is a civil action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. Both sides have moved for Summary Judgment on the issue of violation, and the Court, having considered the pleadings, motions, briefs in support thereof, and comments of counsel, finds and rules as follows:

The material facts are undisputed. Named plaintiff is a lawfully admitted resident alien living in San Antonio, Texas, with her citizen husband. Defendant is a manufacturer of clothing and is an "employer" within 42 U.S.C. § 2000e(b). On or about July 19, 1969, plaintiff was refused employment at defendant's San Antonio facility because she was not a citizen of the United States. The Regional Director, Equal Employment Opportunity Commission, confirmed the reason for refusal, finding no evidence "that Respondent refused to employ Charging Party because she is Spanish Surnamed."[1] Indeed, persons of Mexican ancestry make up more than 92% of defendant's total employees, 96% of its San Antonio employees, and 97% of people doing the work for which plaintiff applied, negating discrimination on the basis of ances-

try or ethnic background. Defendant has, however, and will continue to employ only citizens of the United States.[2]

■ Congress has declared it unlawful for an employer "to fail or refuse to hire . . . any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a) (1). The sole issue presented by the mutual Motions for Summary Judgment is whether a refusal to hire because of citizenship alone was prohibited as discrimination on the basis of "national origin." The Court holds that it was and is.

■ Defendant argues that the Act's failure to simply include "citizenship" as a prohibited classification must be viewed, in light of the careful consideration shown by the legislative history, as evidence of an intent to exclude it. See 2 U.S.C.Cong. & Admin.News, p. 2355 et seq. (1964). The Court finds the legislative history equally consistent with its view that alienage is included in "national origin" and, indeed, is elsewhere specifically excluded from coverage in employment "outside any State." 42 U.S.C. § 2000e–1. The original purpose clause for Title VII of H.R. 7152, 88th Cong., 2d Sess. § 701(a) (1964), declared that *"all persons within the jurisdiction of the United States* have a right to the opportunity for employment without discrimination on account of . . . national origin." See H.R.Rep.No. 914, 88th Cong., 2d Sess., 2 U.S.C.Cong. & Admin.News, p. 2401 (1964) (Emphasis added). The Equal Employment Opportunity Commission, having enforcement responsibility, has issued a guideline on discrimination because of national origin providing as follows:

"Because discrimination on the basis of citizenship has the effect of dis-

---

1. The Director found and defendant confirms that its rejection of applicants for employment who are not citizens of the United States is based upon a long standing policy established by its founder and that there is no national security justification for the policy.

2. While the acquisition of Tex Mfg. Co. by defendant in June, 1971, resulted in its absorbing approximately 300 non-citizen employees who will not be discharged, the policy will be enforced with regard to new applications. See Defendant's Amended Answer to Plaintiff's First Set of Interrogatories, filed May 10, 1971.

criminating on the basis of national origin, a lawfully imigrated alien who is domiciled or residing in this country may not be discriminated against on the basis of his citizenship, . . . ."

29 C.F.R. § 1606.1(d) (1971). This interpretation is supported by the Act and its Legislative history and is entitled to great deference. Griggs v. Duke Power Co., 401 U.S. 424, 433–434, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971).

■■ Defendant argues that in order to correctly express the will of Congress "citizenship" and "national origin" must be distinguished and the first word of the above quoted guideline must be changed from "because" to "when." This Court disagrees. While "citizenship" and "nationality" may have different technical meanings, the term "national origin" is broad enough to encompass both. It is clear that "classifications based on alienage, like those based on nationality or race, are inherently suspect and subject to close judicial scrutiny." Graham v. Richardson, 403 U.S. 365, 372, 91 S.Ct. 1848, 1852, 29 L. Ed.2d 534 (1971) (Footnotes omitted). Like racial, sexual, or religious discrimination in employment, citizenship discrimination deals with

" . . . the ability to provide decently for one's family in a job or profession for which he qualifies and chooses. Title VII of the 1964 Civil Rights Act provides us with a clear mandate from Congress that no longer will the United States tolerate this form of discrimination. It is, therefore, the duty of the courts to make sure that the Act works, and the intent of Congress is not hampered by a combination of a strict construction of the statute and a battle with semantics." Culpepper v. Reynolds Metals Co., 421 F.2d 888, 891 (5th Cir. 1970) (Footnote omitted). For the Court to engage in the semantic battle fought by defendant, and to strictly construe "national origin" to exclude and permit employment discrimination on the basis of citizenship, would do violence to Congress's intent. By 42 U.S.C. § 2000e–2(a) (1) Congress meant to prohibit all invidious employment discrimination on the basis of national origin, including national ancestry, ethnic heritage, nationality and citizenship.[3]

Defendant points to the federal government's civil service policies which, while prohibiting discrimination on the basis of "national origin," limits employment to citizens of the United States. *Compare*, 5 U.S.C. § 7151; Exec.Order No. 11478, 34 Fed.Reg. 12985 (1969), as amended, Exec.Order No. 11590, 36 Fed. Reg. 7831 (1971); *with* Federal Personnel Manual Supplement 990–991, § 338.101 (1969). But whatever federal executive policy in governmental employment,[4] Congressional policy regarding employment in interstate commerce is clear. It is to prohibit invidious discrimination based upon national origin, including citizenship or alienage. Congress has, pursuant to its broad constitutional powers to determine the conditions of entry and residence of aliens in the United States, provided a comprehensive plan for regulation of immigra-

3. England's Race Relations Act of 1968 has been so construed by Swanwick, J., holding that the Act's prohibition of discrimination on the ground of "national origins" required invalidation of a London Borough rule stipulating that an applicant for housing must be a British citizen. London Borough of Ealing v. Race Relations Board [1971] 1 All E.R. 424, noted by Zellick, The Meaning of "National Origins," 121 The New Law Journal 341 (1971).

4. The government is excluded from coverage under 42 U.S.C. § 2000e(b) (1), and the validity of this regulation is not before the Court. Similar State requirements may be questionable under the Equal Protection Clause; see Graham v. Richardson, *supra* at 374 of 403 U.S., 91 S.Ct. 1848, citing, Takahashi v. Fish & Game Comm'n, 334 U.S. 410, 68 S.Ct. 1138, 92 L.Ed. 1478 (1948); and/or the Supremacy Clause. See 29 C.F.R. § 1606.1(e); *cf.*, Local 246 v. Southern Calif. Edison Co., 320 F.Supp. 1262 (C.D.Cal.1970).

tion and naturalization, including limitations designed to insure that aliens admitted will become a productive part of our society. See Graham v. Richardson, *supra* at 377 of 403 U.S., 91 S.Ct. 1848. It is inconceivable that Congress would then, in equally comprehensive legislation pursuant to its broad constitutional powers to regulate interstate commerce, permit these aliens to be denied employment because not citizens. To the contrary, it was this, among other invidious employment discriminations, based upon "inherently suspect classifications," which Congress intended to, and the Courts must, prohibit.

■ In summary, the material facts are undisputed. Defendant intentionally refused to hire plaintiff because plaintiff was not a citizen of the United States. As a matter of law, this was a refusal to hire an individual "because of such individual's . . . national origin," and, hence, an unlawful employment practice under 42 U.S.C. § 2000e–2(a) (1). While clearly not malicious, the intent with which defendant has and is engaging in this practice is sufficient to justify injunctive relief. Local 189 v. United States, 416 F.2d 980, 996 (5th Cir. 1969), cert. denied 397 U.S. 919, 90 S.Ct. 926, 25 L.Ed.2d 100 (1970); see 42 U.S.C. § 2000e–5(g). It is, therefore Ordered as follows:

1. Defendant's Motion for Summary Judgment is, hereby, in all things, denied.

2. Plaintiff's Motion for Summary Judgment, is, to the extent reflected above and in the Judgment to enter, granted, and, to the extent requesting additional relief not herein designated, denied.

■ 3. Judgment shall issue declaring that defendant's refusal to hire plaintiff was an unlawful employment practice and enjoining defendant from

further engaging in such unlawful employment practice.[5]

4. The Court will direct further proceedings as may be necessary to determine any additional relief, not herein specifically granted, prayed in Petitioners' Second Amended Complaint, to which plaintiff may be entitled.

is clearly appealable under 28 U.S.C. § 1292(a) (1). See Teamsters v. Braswell Motor Freight Lines, Inc., 428 F.2d 1371, 1373 n. 3 (5th Cir. 1970).

---

5. While this is a partial summary judgment under Rule 56(d), F.R.Civ.P., and hence interlocutory, it would appear appealable as inescapable from the granting of the permanent injunction, which