Cecilia **ESPINOZA** and Rudolfo Espinoza,
Plaintiffs-Appellees,

v.

**FARAH MANUFACTURING COMPANY,**
Inc., Defendant-Appellant.

No. 71–3364
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

May 31, 1972.

Rehearing and Rehearing En Banc
Denied July 21, 1972.

* [1] Rule 18, 5th Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York, 431 F.2d 409, Part I (5th Cir. 1970).

**1332**

William Duncan, Jack T. Chapman, Kenneth R. Carr, El Paso, Tex., Thomas H. Sharp, Jr., San Antonio, Tex., Kemp, Smith, White, Duncan & Hammond, El Paso, Tex., for defendant-appellant.

Ruben Montemayor, San Antonio, Tex. (Daniel V. Alfaro, on Rehearing En Banc), for plaintiffs-appellees.

Julia P. Cooper, Chief, Appellate Section, William A. Carey, Gen. Counsel, John de J. Pemberton, Jr., Acting Gen. Counsel, George H. Weiler, III, Philip B. Sklover, Charles L. Reischel, Lutz A. Prager, Attys., Equal Employment Opportunity Comm., Washington, D. C., amicus curiae.

Before BELL, DYER and CLARK, Circuit Judges.

CLARK, Circuit Judge:

This appeal requires us to decide which practices Congress intended to prohibit when it made it unlawful for an employer "to fail or refuse to hire . . . any individual . . . because of such individual's . . . national origin." 42 U.S.C.A. § 2000e–2(a) (1). More precisely, we must determine whether the words "national origin" should be read to mean, or at least include, "citizenship." Since we conclude they should not; that none of the reasons offered for doing so will withstand close analysis; that this is one of those cases where Congress should be taken at its words; and that, put simply, "national origin" means exactly and only that, we reverse the judgment below.

The material facts are clear and undisputed. Cecilia Espinoza, plaintiff-appellee in this cause, is a lawfully admitted resident alien living in San Antonio, Texas with her citizen husband. In July 1969 she was refused employment at the San Antonio division of Farah Manufacturing Company, defendant-appellant, because she was not a United States citizen. This refusal was based upon a longstanding policy of the company, established by its founder for security reasons. The merits of such a policy are not at issue here, but rather we examine the company's right to enforce it in light of Title VII of the Civil Rights Act of 1964.

Subsequent to Farah's refusal of employment, Espinoza filed a charge with the Equal Employment Opportunity Commission, alleging that Farah had discriminated against her on the basis of her national origin—which is Mexican—in violation of Title VII. After making findings of fact, the EEOC, under provisions of the Act, authorized Espinoza to bring suit in federal court since no administrative solution to the complaint was forthcoming.

The EEOC Regional Director found, and the parties have never contested, that Espinoza was not denied employment because she is Spanish surnamed. Indeed, the district judge found that "persons of Mexican ancestry make up more than 92% of defendant's total employees, 96% of its San Antonio employees, and 97% of the people doing the work for which plaintiff applied." The judge con-

cluded that there was *no discrimination on the basis of ancestry or ethnic background.* Thus, this is not a case wherein an employer has feigned adherence to a policy which is no more than a subterfuge designed to conceal a brand of discrimination the Act prohibits. The record before us makes it unquestionable that Espinoza was denied an opportunity for employment because she lacks United States citizenship, and for no other reason.

The court below, upon motions for summary judgment by both sides, granted Espinoza relief by enjoining Farah from further refusal to hire her on the basis of her citizenship. This appeal followed.

We are keenly aware of the broad policy commitment of Title VII, and of the guarantee Congress made therein that "all persons within the jurisdiction of the United States" should have the opportunity for employment free from *specified kinds of discrimination.* It is in fact this court's duty "to make sure that the Act works, and the intent of Congress is not hampered by a combination of a strict construction of the statute and a battle with semantics." Culpepper v. Reynolds Metal Company, 421 F.2d 888, 891 (5th Cir. 1970). However, as Judge Bell remarked, though we approach the statute "in a generous way," we yet "want to stay within the intent of Congress in making it work." *Id.* at n. 3. Thus, while Farah's policy could be characterized as arbitrary and there is little doubt that Congress could have acted to prohibit its practice, the question remains: Has Congress so acted?

■■■ Several general principles guide us in our construction of this statute. The first is that we not read it mechanically, Miller v. Amusement Enterprises, Inc., 394 F.2d 342 (5th Cir. 1968), nor in a fashion so confined to the bare words that our literalism risks a strangulation of meaning. Lynch v.

Overholser, 369 U.S. 705, 82 S.Ct. 1063, 8 L.Ed.2d 211 (1962). Here, there is no such risk. We find the words "national origin" to be entirely clear and unambiguous, both standing alone and in the context in which they appear in the statute.

■■■ In such a situation, a second well-settled principle provides that where the meaning of the words is plain, no resort need be had to legislative history. United States v. Public Utilities Commission, 345 U.S. 295, 314, 73 S.Ct. 706, 717, 97 L.Ed. 1020 (1953); Ex parte Collett, 337 U.S. 55, 61, 69 S.Ct. 944, 947, 93 L.Ed. 1207, 1211 (1949); General Electric Company v. Southern Construction Company, Inc., 383 F.2d 135, 138 (5th Cir. 1967). *See also* United States v. Bass, 404 U.S. 336, 92 S.Ct. 515, 518, 30 L.Ed.2d 488 (1971). We have nevertheless considered the history of this section of the Act to be assured that Congress did not intend something entirely different from the normal meaning of the words they used. Our investigation lent not one iota of support for the interpretation Espinoza here urges. On the contrary, the single direct definition given to "national origin" in the history of the Act is completely consistent with the ordinary and expected import of those words:

> May I just make very clear that "national origin" means national. It means the country from which you or your forebears came from. You may come from Poland, Czechoslovakia, England, France, or any other country.[1]

Espinoza was not denied a job because of her Spanish surname, her Mexican heritage, her foreign ancestry, her own or her parents' birthplace—all of which characteristics she shared with the vast majority of Farah's employees. Rather she was refused employment—irrespective of what her national origin may have been—because she had not acquired United States citizenship. Neither the

1. 110 Cong.Rec. 2548–49 (1964) (remarks of Congressman Roosevelt, Chairman of the House Subcommittee reporting the bill).

language of the Act, nor its history, nor the specific facts of this case persuade us that such a refusal has been condemned by Congress.

It avails Espinoza naught to argue that by denying her relief we thwart the Act's general purpose of bringing to every man and woman in this country the opportunity to "provide decently for one's family in a job or profession for which he [or she] qualifies and chooses." *Culpepper, supra* 421 F.2d at 891. Laudable though this objective may be, we have not the authority to declare unlawful any and all activities that might impede its effectuation. Quite obviously, a great host of arbitrary and discriminatory employment practices, far too numerous to mention, remain unchecked and unhampered by the Act. We hold that refusal to hire non-citizens is one of them. Though the general policy of the Act doubtless was to halt arbitrary employment practices, through the unmistakable words of the Act's actual text Congress has offered its conception of the specific spheres in which this general policy is to operate, and thereby has necessarily limited the policy's outreach. *See* Moragne v. States Marine Lines, Inc., 398 U.S. 375, 392, 90 S.Ct. 1772, 1783, 26 L.Ed.2d 339 (1970).

■■ There remain two other theories espoused by Espinoza as being supportive of her case. The first relies upon the text of an EEOC regulation which provides:

> Because discrimination on the basis of citizenship has the effect of discriminating on the basis of national origin, a lawfully immigrated alien who is domiciled or residing in this country may not be discriminated against on the basis of his citizenship . . .[2]

We agree that in many situations discrimination on the basis of citizenship would indeed be banned by the Act, *e. g.,* where such a practice is symptomatic of or a necessary element within prohibited national origin discrimination,

or where it is a mere pretense to camouflage national origin discrimination. In such situations we would find this regulation enforceable as a proper effectuation of the Act. However, no such situation exists here. The parties are agreed that the citizenship discrimination in the case at bar was neither part of a larger plan nor a cover-up for some other motive. Thus, to the extent such discrimination has been declared by the EEOC to be per se illegal, we refuse to follow its regulation. The "great deference" the Supreme Court has found to be due that agency's interpretation of the Act, Griggs v. Duke Power Company, 401 U.S. 424, 434, 91 S.Ct. 849, 855, 28 L.Ed.2d 158, 165 (1971), does not require a different result. In *Griggs,* the Court found that "(s)ince the Act and its legislative history support the Commission's construction, this affords good reason to treat the guidelines as expressing the will of Congress." 401 U.S. at 434, 91 S.Ct. at 855. Moreover, in that case the Court made an independent analysis of the pertinent legislative history and decided that "the conclusion is inescapable that the EEOC's construction . . . comports with Congressional intent." 401 U.S. at 436, 91 S.Ct. at 856. As previously discussed, we do not have before us analogous circumstances. While acknowledging deference is due, blind adherence is not.

■ The final theory Espinoza urges would have us penalize Farah's activity for being a classification "based on alienage" which "like those based on nationality or race" is "inherently suspect and subject to close judicial scrutiny." Graham v. Richardson, 403 U.S. 365, 372, 91 S.Ct. 1848, 1852, 29 L.Ed.2d 534, 541, (1971). Certainly *state action* which discriminates against persons on the basis of their citizenship, or lack thereof, threatens to run afoul of the Fourteenth Amendment. Takahashi v. Fish & Game Commission, 334 U.S. 410, 68 S.Ct. 1138, 92 L.Ed. 1478 (1948); Truax v. Raich, 239 U.S. 33, 36 S.Ct. 7, 60 L.Ed. 131

2. 29 C.F.R. § 1606.1(d).

(1915); Chapman v. Gerard, 456 F.2d 577 (3rd Cir. 1972). Moreover, the original purpose clause for Title VII of H.R. 7152, 88th Cong., 2d Sess. § 701 (a) (1964), provided that *"all persons* within the jurisdiction of the United States have a right to the opportunity for employment without discrimination on account of . . . national origin."[3] (emphasis added). Neither of these factors is of any aid to our construction of 42 U.S.C.A. § 2000e–2(a) (1). As to the state action cases, it should be noted that no constitutional attack is being made here; nor could there be.[4] What the state cannot constitutionally prohibit has no relationship to what a private individual can constitutionally practice. Regarding the purpose clause's "all persons" provision, it need only be said that the fact all persons are protected by the Act gives no definition to what they are protected from. As a person within this country's jurisdiction, Espinoza is unquestionably protected against discrimination based upon race, color, religion, sex, or national origin. Having found no persuasive reasoning to upset the ordinary meaning of the last of these five prohibitions, *see* Banks v. Chicago Grain Trimmers Ass'n, 390 U.S. 459, 88 S.Ct. 1140, 20 L.Ed.2d 30, reh. denied 391 U.S. 929, 88 S.Ct. 1800, 20 L.Ed.2d 671 (1968), we conclude that Espinoza was not entitled to relief and that the summary judgment granted in her behalf must be

Reversed.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

### PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.

---

3. *See* H.R.Rep. No. 914, 88th Cong., 2d Sess., 2 U.S.C. Cong.Admin. News, p. 2401 (1964).

4. We do not understand Espinoza to contend that this statute would be constitutionally suspect for *failing* to prohibit discrimination against aliens. Obviously, such an argument would be without merit. Williamson v. Lee Optical Company of Oklahoma, 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563, 573 (1955); Stone v. City of Maitland, 446 F.2d 83 (5th Cir. 1971); E. B. Elliot Advertising Co. v. Metropolitan Dade County, 425 F.2d 1141, 1155 (5th Cir. 1970).