**Louis J. MURRY et al.**

v.

**AMERICAN STANDARD, INC., et al.**

**Civ. A. No. 73–35.**

United States District Court,
E. D. Louisiana.

March 15, 1973.

———◆———

Richard B. Sobol, David J. Dennis, Elie, Sobol, Strickler & Dennis, New Orleans, La., for plaintiffs.

Andrew P. Carter, David E. Walker, H. Sloan McCloskey, Monroe & Lemann, New Orleans, La., for defendants.

HEEBE, Chief Judge:

Cornell Hood, one of the named plaintiffs in this Title VII class action, has asked this Court for a preliminary injunction reinstating him in his job as an apprentice caster at the Franklin Avenue, New Orleans, plant of American Standard, Inc., pending this Court's determination of the remaining issues in the case. He alleges that he was discharged from his position because of his race. The company, on the other hand, claims that Mr. Hood was fired because his work was unsatisfactory. The Court has heard the evidence and considered the briefs of counsel and is now ready to rule.

Plaintiff Hood is black, has completed high school and some college work, and is an Air Force veteran. After his discharge from the service, he returned to

New Orleans and worked for two years as a warehouseman for Meyers Brothers Drug Company. Later, he took a job with the Bell Telephone Company. He was fired by the Telephone Company for failing to list an old traffic violation on his employment application. On September 4, 1971, Hood was hired by American Standard to be an apprentice caster. Upon his employment, however, he was first assigned work as a mold soaker, an unskilled job. Five days later, on September 9, 1971, he was assigned as an apprentice bench caster under the training supervision of Joe Bell, one of the several foremen in the cast shop. Mr. Bell trained Cornell Hood as an apprentice caster for seventeen working days, from September 9 to October 1, 1971. On October 1 Hood was fired.

American Standard, Inc., is engaged in an industry affecting commerce—the manufacture of vitreous china plumbing fixtures. The fixtures are cast in plaster of paris molds from liquid clay and later sprayed with a surface glaze and baked in kilns at high temperatures.

A bench caster is a skilled worker who pours the liquid clay into the molds and then processes and tools the bowls until they are ready for glazing. There are a total of eighty-four steps or "procedures" which he must follow. Apprentice casters are assigned to a foreman to be trained, and work under his close supervision until they "make the bench" by becoming proficient enough to go off an hourly wage and onto "piecework." The apprentices begin making about five bowls a day and are paid the hourly wage until they can make enough bowls so that piecework payment becomes more lucrative (about thirteen bowls a day).

After hearing the sometimes conflicting testimony, this Court is convinced that the weight of the credible evidence preponderates that Cornell Hood was discharged because of his race. We find that Foreman Bell consistently harassed Hood by giving him incomplete and inconsistent instructions and then calling him down for not following the instructions properly, and by making corrective markings on his ware when it was still soft, thereby making it more difficult to rework. The evidence indicates that white employees under Mr. Bell were not treated in the same fashion. In addition, Foreman Bell placed restrictions as to talking on the job on Hood and other blacks which were not placed on whites, and repeatedly called Hood "boy," a form of address not applied to any whites. We also note that all the black apprentices trained full-time by Joe Bell failed to make the bench, while all the whites made it. It is true that two white employees complained of harassment by Joe Bell but since both of them had long hair, those complaints could easily be evidence of further prejudice on the part of Mr. Bell rather than indications of harsh but equally applied treatment. Furthermore, the Court is persuaded that the reluctance of Mr. Hood to follow Mr. Bell's instructions to sponge his bowls on the morning of October 1 was the result of prior deficient instructions by Foreman Bell and not, as defendant claims, a willful refusal to obey a direct and reasonable order.

Under all of these circumstances, the Court does not find it necessary to choose between the conflicting evidence as to the exact degree of adequacy of plaintiff's work since it would not be at all startling for a trainee working under the conditions described above to experience some work difficulties.

American Standard, in order to convince us that Joe Bell's treatment of Cornell Hood was not discriminatory, points out that: 1) the final decision to fire Cornell Hood was made by General Foreman Gene Bernheisel, not by Mr. Bell; and 2) Sam Francis, a black who was pulled from the casting bench by Joe Bell was given another chance under another foreman and was pulled a second time. The evidence indicates, however, that Mr. Bernheisel's decision was made on the recommendation of, and probably in order to back up, Mr. Bell,

and that Mr. Francis' second removal from the bench was as unwarranted as the first.

In short, in order to hold that plaintiff was discharged for reasons of workmanship, not race, this Court would have to find the testimony of Foreman Bell more credible that of the various witnesses who contradicted him and testified to his discriminatory treatment of black employees. We do not so find.

■ American Standard also argues that, even if Mr. Hood was fired for racial reasons, this Court is without the power to issue a temporary injunction since the right to obtain preliminary injunctive relief under Title VII was granted to the Attorney General only, and not to private litigants. This contention was squarely rejected by the Fifth Circuit in Culpepper v. Reynolds Metals Co., 421 F.2d 888 (5th Cir. 1970). In reply to the identical argument by the defendant in that case, the Court stated that "[i]t would, therefore, seem that it was the purpose of Congress in enacting § 2000e-5(b) to make it clear that federal courts have power to grant injunctive relief including preliminary injunctions and temporary restraining orders in actions brought by private individuals." 421 F.2d at 894. Defendant attempts to distinguish this case from *Culpepper* on the ground that *Culpepper* relied on the traditional power of the district court to provide equitable relief when irreparable injury is imminent, coupled with the assertion that there is no irreparable injury in the present case. The *Culpepper* court goes on to say, however, that "where the statutory rights of employees are involved and an injunction is authorized by statute, the usual prerequisite of irreparable injury need not be established before obtaining an injunction because irreparable injury should be presumed from the very fact that the statute has been violated." 421 F.2d at 894–895. *See also,* United States v. Hayes Int. Corp., 415 F.2d 1038 (5th Cir. 1969); Hicks v. Crown Zellerbach Corp., 49 F.R.D. 184 (E.D.La.1968).

Accordingly, it appears from the evidence that plaintiff should now be afforded relief on the issue of reinstatement, pending hearing and determination by the Court of the remaining issues in this cause. Plaintiff is instructed to submit an appropriate order.

This opinion will serve as the Court's findings of fact and conclusions of law.