ZEHMER, Judge,
dissenting.
I respectfully dissent from affirmance of the order refusing to permit the appellant, Machules, to petition for review with the Department of Administration (DOA) under the circumstances shown by this record. Machules was represented by a lay employee of the American Federation of State, County and Municipal Employees (AFSCME) under a collective bargaining agreement covering his employment, and not by a lawyer skilled in the intricacies of administrative litigation. I am persuaded that the manner in which his employer, the Department of Insurance (Department), and DOA processed his grievance request misled Machules and his lay representative, to his detriment, and that Machules should be permitted to have administrative review of the Department’s order.
The scant record on appeal reveals the following pertinent events. By letter dated January 30, 1986, the Department notified Machules that he had been absent from his job assignment without authorized leave for a period of three consecutive days and that, “in accordance with Section 22A-7.-10(2), Career Service Personnel Rules, you have abandoned your position” with the Department and “are considered to have resigned from the Career Service.” That letter also stated:
Separation resulting from abandonment of position is not appealable to the Career Service Commission; however, you do have the right to petition the Department of Administration for a review of the facts in the case and a ruling as to whether the circumstances constitute abandonment of position. If you wish to petition the Department of Administration for a review of the action taken, you must do so within twenty (20) calendar days from receipt of this letter. The petition must be directed to the Secretary of Administration, Department of Administration, Carlton Building, Tallahassee, Florida 32301.
Nothing was said in the letter to put Ma-chules on notice that this remedy was exclusive of the grievance procedure provided under the collective bargaining agreement.
The Department’s notice was received by Machules on or before February 4, for on that date he consulted with representatives of his union and, together with a union official, executed an official grievance form asserting a grievance under article VII, section (1) of the collective bargaining agreement, complaining about his discharge. That grievance form was promptly submitted to the Department. A hearing thereon was scheduled by the Department for February 25, 1985, and confirmed by letter dated February 21, 1985, from the Department’s chief of personnel management. This letter also designated a Step 2 agency representative to handle the grievance for the Department. There is nothing in the record concerning what happened at this hearing.
By letter dated March 11, 1985, the Department advised the union representative that the grievance was denied for the following reasons:
The above-referenced grievance has been appealed to Step 2 of the grievance procedure as established in the Master Agreement between the State and AFSCME Council 79. Grievant Ma-chules alleged a violation of Article VII, Section (1), Discipline and Discharge, by the Department of Insurance.
The relief requested is to allow the griev-ant “to be reinstated to his former position”.
The grievance as it relates to Article VII, Section 1 of the Contract is denied. It is indisputable that Mr. Machules was separated from his position under a theory of abandonment of position. (Department’s Exhibit 7) Article VII, Section 1 exclusively addresses “Disciplinary Action” in
*442 the form of pay reductions, suspensions and dismissals and only provides that “disciplinary reasons” shall be grievable. In addition, Article VI, Section 1 of the Contract defines “grievance” as a dispute involving the interpretation or application of the “specific provisions of this Contract ...” A review of the Contract reveals that the issue of "abandonment of position” is never addressed directly or indirectly. Thus, the issue of job abandonment is not properly grievable under the provisions of the Contract. Section 22A-7.10(2)(a), Florida Administrative Code, provides that “any employee who is absent without authorized leave for 3 consecutive work days shall be deemed to have abandoned the position and resigned from the Career Service”. The Department of Insurance established a prima facie case of abandonment during the Step 2 proceeding by establishing that Mr. Machules was absent from his job assignment without authorized leave for the period January 25,1985 through January 29,1985. (TR-12, 15, 19, 20, 22, 23, 34, 60)
Once a prima facie case of abandonment was established, the issue of whether Mr. Machules’ failure to report to work ultimately constituted an abandonment is not susceptible of resolution in a grievance proceeding. This is true because the Department’s finding of an abandonment is not a “disciplinary action” which can form the basis for a “grievance”. Thus, the issue of Mr. Machules’ alleged abandonment of position cannot appropriately be resolved in a Step 2 grievance proceeding. Section 22A-7.10(2)(a), F.A.C., clearly mandates that the appropriate procedure for determining whether Mr. Machules’ failure to report for work constituted an abandonment of position is by petition to the Department of Administration for review.
It should be noted that this was the first time any notice was given Machules or the union representative that the Department considered this matter was not covered by the grievance procedure, and it came more than two weeks after the expiration of the twenty-day period on February 26. Thus, it was already too late for Machules to obtain review of his dismissal by petition to DOA if that date is controlling.
Obviously disputing the Department’s contention that this was not a proper grievance matter, the union representative wrote to the Director of Labor Relations of DOA, on March 22, 1985, requesting, “in accordance with Article 6, section 3(E) of the AFSCME Master Contract,” consideration of the Step 2 decision at the Step 3 level of the procedure. Replying by letter dated April 1, 1985, DOA advised that the grievance was denied because “the exclusive method by which an employee can petition for review of a separation for ‘abandonment’ is under Chapter 22A-7, F.A.C., (Personnel Rules),” and that under the provision of the rule Machules had twenty days from receipt of the January 30 letter to petition DOA for a review of the facts. Immediately upon receipt of this decision on April 2, 1985, the union representative wrote the Secretary of DOA requesting a hearing, as well as a tolling of the twenty-day time period through April 1, 1985. This letter stated in part:
The Department’s letter to Mr. Ma-chules advised him that the abandonment of position was not appealable to the Career Service Commission. The letter contained no reference to the Union’s Grievance Procedure. Unfortunately AFSCME Regional Office staff in Tampa, and the Appellant, assumed that the abandonment could be reviewed through the AFSCME Grievance Procedure.
A grievance was filed on February 4, 1985. After the time to petition expired, the agency on or about February 21, 1985 scheduled a Step 2 grievance meeting for February 25, 1985.
In its March 11, 1985 response, the agency made the Union aware that its finding of abandonment was not a disciplinary action which can form the basis for a grievance. The agency further advised that the appropriate procedure was a petition by the Appellant to the Department of Administration for review. Had *443 the Appellant been timely advised by the agency upon its receipt of the grievance, of the inappropriate forum/procedure, the Appellant would have had sufficient time to petition your office for review of the alleged abandonment.
This is a request that the time limit for petitioning your office be tolled for the period of February 4, 1985 through April 1, 1985 (DOA’s 3rd Step denial of the grievance) to enable AFSCME Council 79 or the Appellant to petition for a review of the facts in the Machules case, and a ruling as to whether the circumstances constitute abandonment of position. If the request to toll the time limit is granted, please consider this letter as a petition on the behalf of Mr. Machules.
On April 18, 1985, DOA entered its “Order on Receipt of Petition and Notice of Intended Disposition,” in which it indicated that, “although the letter on behalf of Petitioner requests that the time limit for petitioning be tolled so as to make the petition timely, from the facts established in the letter and the applicable rule [22A-7.10(2) ], there is no basis upon which said relief can be granted.” The order invited the petitioner to “submit written evidence, argument or objections to this intended disposition.” Accordingly, on May 10, 1985, Ma-chules filed a “Motion for Reconsideration,” with various attachments, supporting his contention that his immediate supervisor was promptly and timely made aware that Machules’ illness on the dates in question caused him to miss work and that he had not abandoned his position. Among the attached documents was a copy of a decision of an appeals referee rendered in an unemployment compensation proceeding which found, on the evidence presented, that Machules had not in fact abandoned his employment and was not for that reason disqualified from receiving unemployment benefits.[1]
On May 17, 1985, DOA entered the final order here appealed. The order denied petitioner relief based solely on his failure to timely file a petition as required by rule 22A-7.10(2), and no findings were made with respect to the request to toll the time period.
It seems clear to me that, regardless of any well-intentioned motives of the officials involved to strictly enforce DOA’s rule, in an appropriate fact-finding proceeding the Department and DOA may be found to have trapped Machules and the union in a game of “gotcha” by receiving the request for a grievance and keeping it under advisement for the entire twenty days allowed by rule 22A-7.10(2), scheduling a conference on such request for February 25,1985 (the day after the supposed February 24 deadline for petitioning the Department of Administration under that rule), and then, two weeks after that asserted deadline had passed, notifying Machules and the union that the grievance procedure was improper because the dispute was not covered by the collective bargaining agreement and that a petition to DOA within twenty days was the exclusive route of review. Both Machules and the union personnel were, so far as this record shows, acting in good faith in treating his termination as a grievance matter covered by that agreement. Obviously the dispute between them and the Department regarding the propriety of the grievance procedure to review a disputed discharge on grounds of abandonment was a bona fide one, for the Department did not immediately come forward and assert that the matter was outside the collective bargaining agreement’s grievance procedure; rather, the Department “studied” the matter for several weeks before announcing its position. Not until March 11,1985, well past the asserted twenty-day deadline, did the Department first notify Machules and the union that it considered the grievance proceedings inappropriate. Nor did the Department cite any decisional precedent showing that this question had been previously considered and decided adversely to the union’s position. Machules did not sit on his rights and *444 passively permit the time for review to run; instead, the record indisputably shows, he was vigorously pursuing his rights in what we may now assume was the incorrect forum. There is nothing in the record which indicates that DOA or the Department would suffer any prejudice by the short delay in receiving the petition for review on April 2, 1985.
I agree with appellant that these circumstances require application of the doctrine of equitable tolling recognized in the federal decisions cited in the majority opinion,[2] as well as other cases cited in those opinions.[3] The twenty-day time limit set forth in rule 22A-7.10(2) is similar to a statute of limitation and is not a jurisdictional requirement incapable of being waived; this must be so because there is no explicit statutory authority for involuntarily separating an employee from career service under the guise of abandonment (i.e., constructive resignation), much less any explicit statutory authority for the Department or DOA to impose a twenty-day time limit on seeking review of termination on that presumptive ground.[4] In Smith v. American President Lines, Ltd., 571 F.2d 102, the court aptly described the tolling doctrine which has been applied in administrative proceedings by interpreting the Supreme Court decision in Electrical Workers v. Robbins & Myers, Inc., 429 U.S. 229, 97 S.Ct. 441, 50 L.Ed.2d 427:
The Court implied that tolling might be appropriate only where the defendant has actively misled the plaintiff respecting the cause of action, or where the plaintiff has in some extraordinary way been prevented from asserting his rights, or has raised the precise statutory claim in issue but has mistakenly done so in the wrong forum.
571 F.2d at 109.
Factors to be considered in determining whether the time should be tolled under that doctrine include the presence or absence of prejudice to the party relying on the period of limitations, Reeb v. Economic Opportunity Atlanta, Inc., 516 F.2d 924, 930. It has also been said that whether to exercise the equitable power to toll the time limitation depends on whether doing so would be in keeping with the overall purpose of the statutory scheme. Dartt v. Shell Oil Co., 539 F.2d 1256, 1261.
In Culpepper v. Reynolds Metals Co., 421 F.2d 888, the appellant was held by the lower court to have failed to timely file charges with the Equal Opportunity Employment Commission, primarily because he had simultaneously been pursuing a grievance procedure under his collective bargaining agreement. Reversing the dismissal of appellant’s charges, the court of appeals said:
It would, therefore, be an improper reading of the purpose of Title VII if we were to construe the statute as did the district court to permit the short statute of limitations to penalize a common employee, who, at no time resting on his rights, attempts first in good faith to reach a private settlement without litigation in the elimination of what he believes to be an unfair, as well as an unlawful, practice. We, therefore, hold that the statute of limitations, which has been held to be a jurisdictional requirement, is tolled *445 once an employee invokes his contractual grievance remedies in a constructive effort to seek a “private settlement of his complaint.” Culpepper also sought to settle his complaint in 1963 through the grievance procedures. We do not think that Congress intended for a result which would require an employee, thoroughly familiar with the rules of the shop, to proceed solely with his Title VII remedies for fear that he will waive these remedies if he follows the rules of the shop or to do both simultaneously, thereby frustrating the grievance procedure.
Id. at 891.
In Dartt v. Shell Oil Co., 539 F.2d 1256, the court concluded that the tolling doctrine was applicable, in part, because:
We cannot fault Dartt in her efforts to present her cause. She twice promptly sought private legal advice and twice promptly followed that advice. Short of anticipating an administrative dereliction by the Wage and Hour Division, despite her prodding of that agency, it was not to be expected that lapse of time would void her cause. This is not a case of a plaintiff sleeping on her rights nor a defendant in any way being prejudiced thereby either presumptively or in fact. In light of these circumstances and the de facto fulfillment of the main purposes of the Act, we hold that the time limitation was tolled until the filing of Dartt’s notice of intent to sue.
Id. at 1262.
The strict application of the twenty-day time limit to the original letter of termination in this case completely disregards the Department’s willing and intentional participation in the collective bargaining grievance procedure, which was apparently necessary to establish that this claim was not to be treated as covered by that procedure. There is no indication in this record that the Department of Insurance or DOA would suffer any prejudice from the application of this tolling doctrine. Machules cannot, by any stretch of the imagination, be held to have sat on his rights and not actively pursued a remedy to enforce them. I perceive no conflict between the tolling doctrine and the evident purpose of DOA’s rule to compel an employee to promptly assert any disagreement he has with the agency’s decision to terminate on grounds of abandonment. The participation of the Department in the grievance proceeding, as if that were the appropriate procedure, until after the time for petitioning DOA expired under the rule, amounts to affirmative action lulling Machules and the union representative into pursuing the grievance rather than petitioning DOA under the rule. All of the elements of equitable tolling appear to be present in this case. There is no compelling reason evident on this record for mechanistically applying the twenty-day requirement of the rule without consideration of these equitable circumstances. Since the DOA order did not address the propriety of applying the tolling doctrine, the majority errs, in my judgment, in not reversing and remanding with directions to make appropriate findings of fact relevant to the elements of this legal doctrine and decide whether the tolling doctrine should extend the time for Machules to seek administrative review.
I also disagree with the majority’s reasoning that Machules had a clear point of entry into the administrative process and should have simultaneously filed an appeal under rule 22A-7.10(2)(a), so that he will not now be heard to complain. This disposition of the tolling issue merely begs the question. If Machules did not have a clear point of entry, there would be no need to even consider tolling; the lack of a clear point of entry would be enough to excuse his failure to timely appeal. Burleson v. Department of Administration, 410 So.2d 581 (Fla. 1st DCA 1982). The majority’s application of the clear-point-of-entry rule to prevent administrative review of Ma-chules’ termination does little to engender public confidence in the needed simplicity and certainty of the administrative process, which is a primary objective of the Admin *446 istrative Procedure Act, chapter 120, Florida Statutes (1983). The present Florida Administrative Procedure Act was intended to simplify the administrative process and provide the public with a more certain administrative procedure, thereby insuring that the public would receive due process and significantly improved fairness of treatment, than was commonly afforded under the predecessor act. The majority decision does not further this laudable objective; rather, it suggests that the public should be put on notice not to venture into the unpredictable administrative arena without the guidance of competent legal counsel expertly skilled in the art of administrative litigation.
In conclusion, I would hold that appellant made out a prima facie case for applying the administrative tolling doctrine to extend the time for petitioning DOA for review of the notice of discharge for abandonment of position to April 1, 1985, the date DOA finally determined the grievance procedure was inapplicable and so informed the union and Machules. Accordingly, I would remand with directions to grant a section 120.57(1) hearing on disputed factual issues relevant to application of the tolling doctrine and any prejudice the Department may suffer if it is applied. Since the record fails to show any real prejudice from the application of the tolling doctrine to the facts of this case, I do not subscribe to the majority view that Machules necessarily had to pursue both avenues of relief simultaneously in order to preserve his right to administrative review of the merits of the Department’s decision.
Although there is no Florida decision relating to application of the tolling doctrine in administrative proceedings, many federal cases have recognized and approved or disapproved its application in a wide variety of circumstances. The doctrine serves to ameliorate harsh results that sometimes flow from a strict, literalistic construction and application of administrative time limits contained in statutes and rules. For that reason, I fully concur with certification of the question in the majority opinion.

. This order is obviously not controlling on the issue, but it does lend credence, for purposes of this review, to the good faith of Machules’ contentions on the merits.

. Cottrell v. Newspaper Agency Corp., 590 F.2d 836 (10th Cir.1979); Miller v. Marsh, 766 F.2d 490 (11th Cir.1985); Wilkerson v. Siegfried Ins. Agency, Inc., 683 F.2d 344 (10th Cir.1982).

. Electrical Workers v. Robbins and Myers, Inc., 429 U.S. 229, 97 S.Ct. 441, 50 L.Ed.2d 427 (1976); Smith v. American President Lines, Ltd., 571 F.2d 102 (2d Cir.1978); Dartt v. Shell Oil Co., 539 F.2d 1256 (10th Cir.1976), aff'd; 434 U.S. 99 (1977); Reeb v. Economic Opportunity Atlanta, Inc., 516 F.2d 924 (5th Cir.1975); Culpepper v. Reynolds Metals Co., 421 F.2d 888 (5th Cir.1970).

.This is not to say that rule 22A-7.10(2) fails to accord employees constitutional due process, Hadley v. Department of Administration, 411 So.2d 184 (Fla. 1982), or that the Department is wholly without any statutory authority for promulgation of the rule, Cook v. Division of Personnel, Dept. of Admin., 356 So.2d 356 (Fla. 1st DCA 1978). But there is no statute in chapter 110, that I have found, empowering the agency to set jurisdictional time limitations on the right to administrative review.