**Charles WATKINS et al., on behalf of themselves and all others similarly situated, Plaintiffs-Appellees,**

**Frank V. Foster, Plaintiff-Intervenor-Appellee,**

v.

**UNITED STEEL WORKERS OF AMERICA, LOCAL NO. 2369, et al., Defendants-Appellants,**

**Continental Can Company, Inc., Defendant-Appellant.**

No. 74–2604.

United States Court of Appeals, Fifth Circuit.

July 16, 1975.

Thomas N. Crawford, Jr., Birmingham, Ala., Wilfred H. Boudreaux, Jr., New Orleans, La., John C. Falkenberry, Birmingham, Ala., Michael H. Gottesman, Washington, D. C., for United Steelworkers of America.

Wm. B. Dreux, New Orleans, La., Willis S. Ryza, Michael A. Warner, Chicago, Ill., for Continental Can Co.

Gerard C. Smetana, Howard L. Mocerf, Julian D. Schreiber, Thomas Canafax, Jr., Chicago, Ill., amicus curiae for Chamber of Commerce of U. S.

Hilliand Fazande, II, David J. Dennis, New Orleans, La., for Chas. Watkins.

Richard B. Sobol, Washington, D. C., George Cooper, New York City, for appellee Foster.

Gerald D. Letwin, Lutz Alexander Prager, E. E. O. C., Washington, D. C., amicus curiae.

Before GOLDBERG and RONEY, Circuit Judges, and LYNNE, District Judge.

RONEY, Circuit Judge:

This employment discrimination case presents two new tandem issues of topical economic concern, not previously decided by this Court. *First*, given the fact that an employer discriminated in hiring prior to but not after the effective date of Title VII of the Civil Rights Act of 1964, does the use of employment seniority to determine the order of *layoff* of employees violate either Title VII or 42 U.S.C.A. § 1981. *Second*, in such circumstances, does the use of employment seniority to determine the order of *recall* of employees violate either Title VII or § 1981. The District Court for the Eastern District of Louisiana held that these "last hired, first fired" and the "last fired, first rehired" provisions of the negotiated seniority system, although facially nondiscriminatory, were unlawful because the application of these provisions perpetuated the effects of the Company's earlier discriminatory practices. Watkins v. United Steel Workers of America v. Local · No. 2369, 369 F.Supp. 1221 (E.D.La.1974). On appeal, we reverse and hold that, in the case at bar, the use of employment seniority to determine the order of layoff and recall of employees does not violate the provisions of either Title VII or § 1981.

The named and class plaintiffs are black employees of Continental Can Company's Harvey, Louisiana, plant, presently laid-off under the allegedly discriminatory layoff and recall procedures embodied in the collective bargaining agreement. They were all hired under nondiscriminatory employment practices and were in their rightful place of employment prior to layoff. The defendants are the employer, Continental Can Company, Inc., and the union, Local 2369, United Steelworkers of America, AFL–CIO.

The essential facts are undisputed. The Company's plant in Harvey, Louisiana, has been in operation for many years, but, with the exception of two blacks who were hired during World War II, only whites were hired at this plant until 1965. At the end of 1966, there were three black employees, including the original two, out of 410 hourly employees. The Company began hiring more black workers in 1967 and 1968, and hired blacks to a substantial degree in the years 1969, 1970 and 1971. At one point in 1971 there were, according to the Company, over 50 blacks among a total of 400 hourly employees.

Beginning in 1971 and continuing through 1973, there was a substantial cutback in employment at the Harvey plant. By April of 1973, there remained only 152 hourly employees. Pursuant to the terms of the collective bargaining agreement, layoffs are made on the basis of total employment seniority; the last man to be hired is the first to be laid-

off. Laid-off employees are placed on a recall list and are reemployed, as needed, in the reverse order of the layoffs. In other words, the most senior employee on recall is the first to be reemployed. The collective bargaining agreement provides that an employee's seniority rights for the purposes of recall terminate after a minimum of two years or a maximum of five years, depending upon the employee's length of service.

These contract provisions were followed in making the layoffs at the Harvey plant, which layoffs have affected employees who were hired as early as 1951. As a necessary result, all of the black employees hired after 1965 were laid-off, and the Company's present work force is again all-white, except for the two blacks hired in the 1940's. The first 138 persons presently on the recall list are white.

In June of 1973, plaintiffs filed in this suit, instituted in June 1970, a motion for partial summary judgment, requesting the district court to declare the layoff and recall procedures embodied in the collective bargaining agreement between defendants to be illegal under both Title VII and 42 U.S.C.A. § 1981. Concluding that the application of a negotiated system of plant seniority to determine the order of layoff and recall of employees was unlawful in the case at bar, the district court granted plaintiffs' motion. The court reasoned that, because of the discriminatory hiring practiced by the Company at least up until 1963, blacks as a class had been precluded from gaining plant seniority. The district court therefore held that application of the presently-neutral seniority system violated both Title VII and § 1981 by perpetuating the effects of the Company's earlier discriminatory practices. Watkins v. United Steel Workers of America, Local No. 2369, 369 F.Supp. 1221 (E.D.La.1974).

On May 14, 1974, the district court entered an unreported judgment effecting its decision. In general, the court required the following:

(a) That the Company immediately reinstate a sufficient number of black employees to achieve the ratio of black-white employment at the Harvey plant as it existed in 1971;

(b) That the Company give back pay to those black employees ordered reinstated;

(c) That no white person currently employed be laid off to make room for the recalled black employees;

(d) That all employees be paid for forty hours' work per week even if the number of hours worked is less than forty;

(e) That future layoffs be allocated among employees in accordance with the black-white ratio in the work force at the time of the layoffs;

(f) That laid-off employees not immediately recalled be classified by race and that all future recalls be made on a one-for-one basis until all laid-off black employees have been recalled;

(g) That, after all laid-off employees have been recalled, the Company hire blacks exclusively until the percentage of black employees on the work force reaches that which existed in 1971.

The defendants appeal from this judgment, which was suspended pending appeal by order of the district court.

### Holding

Confronting a case of first impression in this Court, the field of law addressed by this case being active and developing, we state our precise holding lest the recited reasons by which it was reached be conceived to narrow or broaden the precedent here established.

■ We hold that, regardless of an earlier history of employment discrimination, when present hiring practices are nondiscriminatory and have been for over ten years, an employer's use of a long-established seniority system for determining who will be laid-off, and who will be rehired, adopted without intent to discriminate, is not a violation of Title

VII or § 1981, even though the use of the seniority system results in the discharge of more blacks than whites to the point of eliminating blacks from the work force, where the individual employees who suffer layoff under the system have not themselves been the subject of prior employment discrimination.

This puts the Fifth Circuit in line with the Third and Seventh Circuits, the only other Court's of Appeal which have focused on the issue. Jersey Central Power & Light Co. v. Local 327, IBEW, 508 F.2d 687 (3rd Cir. 1975); Waters v. Wisconsin Steel Works, 502 F.2d 1309 (7th Cir. 1974). Contrary decisions have been reached by district courts other than the one from which this appeal is taken. See Schaefer v. Tannian, E.D.Mich., 394 F.Supp. 1136 (1975); Delay v. Carling Brewing, 9 E.P.D. § 9877 (N.D.Ga.1974).

We specifically do not decide the rights of a laid-off employee who could show that, but for the discriminatory refusal to hire him at an earlier time than the date of his actual employment, or but for his failure to obtain earlier employment because of exclusion of minority employees from the work force, he would have sufficient seniority to insulate him against layoff. Cf. Franks v. Bowman Transportation Co., 495 F.2d 398 (5th Cir. 1974), cert. granted, 420 U.S. 989, 95 S.Ct. 1421, 43 L.Ed.2d 669 (1975); see Last Hired, First Fired Layoffs and Title VII, 88 Harv.L.Rev. 1544 (1975).

### Layoff Under Title VII

The initial question is whether one laid off under a last hired, first fired system is discharged or discriminated against as to his terms and conditions of employment because of "such individual's race, color, religion, sex, or national origin" under § 2000e–2(a).

(a) It shall be unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, sex, or national origin; . . . (emphasis added)

Plaintiffs do not argue, as indeed they could not, that the challenged seniority system per se violates this provision of Title VII. But, they argue, a practice which is facially neutral but which affects blacks disproportionately to whites, is discriminatory in effect, and must be modified unless justified by business necessity. Griggs v. Duke Power Co., 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). The argument that this is a Griggs case fails not alone from the fact that test provisions of the statute were there in issue.

Griggs dealt with a potential work force which included blacks and whites, and from which black applicants were disproportionately screened out by the requirement of a high school diploma. Without business necessity, black applicants, otherwise equal with white applicants in ability to perform the job, were more likely to be eliminated from employment by irrelevant criteria. Here, the plaintiffs are in no such circumstance. Each has his rightful place in the employment hierarchy, without regard to race. This is important. Each is treated equally with white persons who have places equal to his in the hierarchy. No individual black employee is, because of his race, more likely than his white counterpart to be affected by the applicable criteria, seniority.

The plaintiffs argue that the present seniority system has the effect of "locking in" the effects of prior discrimination under our line of cases which invalidated seniority systems which "locked in" the effects of prior discrimination. Franks v. Bowman Transportation Co., 495 F.2d 398 (5th Cir. 1974), cert. granted, 420 U.S. 989, 95 S.Ct. 1421, 43 L.Ed.2d 669 (1975); Local 189, United Papermakers & Paperworkers v. United States, 416 F.2d 980 (5th Cir. 1969), cert. denied, 397 U.S. 919, 90 S.Ct. 926, 25 L.Ed.2d 100 (1970). See also, United States v. Jacksonville Terminal Co., 451 F.2d 418 (5th Cir. 1971), cert. denied, 406

U.S. 906, 92 S.Ct. 1607, 31 L.Ed.2d 815 (1972). In these departmental seniority system cases, the fact that the system was racially neutral on its face did not save it under Title VII, because its effect was to cut into the employee's present right not to be discriminated against on the ground of race. But overlooked by plaintiffs is the fact that the classes of plaintiffs involved in all of these cases were employees who had not attained, as individuals, their own rightful places of employment. Discriminatory employment, promotion and transfer practices served as obstacles to their gaining the employment place they would have been in, but for prior discrimination as to them.

The district court had no basis in fact for the decision that the Company's history of racial discrimination in hiring makes it impossible for blacks to have sufficient seniority to withstand layoff, insofar as the plaintiffs in this lawsuit are concerned. Age, not race, is the principal reason the plaintiffs in this case did not have sufficient seniority to withstand layoff. All but one were under the age of legal employment when the Company commenced equal hiring. No plaintiff has alleged that he applied for employment with the Company prior to 1965 and was rejected for discriminatory reasons or that he would have applied for employment but for the discriminatory hiring practices of the Company. During the working lifetime of these plaintiffs, there has been no history of discrimination, and none of them has suffered individual discrimination at the hands of the Company.

According to the seniority list in the record, the seniority dates of the eight blacks who would be offered the right to reinstatement under the district court order range from January 22, 1968, through July 8, 1969. As of April 1973, their ages ranged from 24 years old to 30 years old. Assuming sufficient work to justify a recall, the eight white employees who would be denied recall because of the reinstatement of these blacks all have 1951 seniority dates.

Thus, the ages of the blacks who would be reinstated in preference to the whites ranged from approximately two years old to seven years old at the time that the whites who would be denied recall were first hired.

■ To hold the seniority plan discriminatory as to the plaintiffs in this case requires a determination that blacks not otherwise personally discriminated against should be treated preferentially over equal whites. The facts reveal that none of plaintiffs sought employment with the Company before 1965, the effective date of Title VII. And, additionally, the district court did not find that the Company has discriminated in hiring since 1965. The result which plaintiffs seek, therefore, is not that personal remedial relief available under Title VII, but rather a preferential treatment on the basis of race which Congress specifically prohibited in Section 703(j). 42 U.S.C.A. § 2000e–2(j). "Discriminatory preference for any group, minority or majority, is precisely and only what Congress has proscribed." Griggs v. Duke Power Co., 401 U.S. 424, 431, 91 S.Ct. 849, 853, 28 L.Ed.2d 158 (1971). Failure to grant a preference to an employee who has attained his own rightful place cannot be held to be discriminatory.

■ Even if one could arrive at a determination that the seniority system was somehow discriminatory, we think it would be exempted from being an unlawful employment practice under Title VII by Section 703(h), 42 U.S.C.A. § 2000e–2(h):

(h) *Notwithstanding any other provision of this subchapter, it shall not be an unlawful employment practice for an employer to apply different* standards of compensation, or different terms, *conditions, or privileges of employment pursuant to a bona fide seniority or merit system,* or a system which measures earnings by quantity or quality of production or to employees who work in different locations, *provided that such differences are not*

*the result of an intention to discriminate* because of race, color, religion, sex, or national origin . . . . (Emphasis added).

There is no contention in this case that the seniority system under attack was the result of an intention to discriminate. The plaintiffs do contend that it is not *bona fide* under our decisions concerning departmental seniority. But those cases involved employees who had not attained their *rightful* place. The decisions of this Court that a seniority system is *bona fide*, even though it does not grant fictional seniority to employees who have not attained their rightful place because of discrimination, make *a fortiori* the decision here that fictional seniority need not be accorded to those who have attained their rightful place. Franks v. Bowman Transportation Co., *supra*; Local 189, United Papermakers & Paperworkers v. United States, *supra.*

In *Local 189*, defendants argued that their *job* seniority system for promotions was a *bona fide* seniority system which Congress exempted from the purview of Title VII in § 703(h). After finding that the job and departmental seniority system for promotions violated the provisions of Title VII by perpetuating the effects of past discrimination, the Court invalidated the job seniority system in *Local 189* as applied to any individual who had been the subject of prior overt discrimination and allowed such employee to compete for jobs on the basis of mill or employment seniority.

The Court carefully explained that the decision in *Local 189* would not foster "reverse discrimination" by creating fictional seniority *for* newly hired blacks:

It is one thing for legislation to require the creation of *fictional* seniority for newly hired Negroes, and quite another thing for it to require that time *actually worked* in Negro jobs be given equal status with time worked in white jobs.

416 F.2d at 995. Distinguishing between remedial and preferential treatment on the basis of race, Judge Wisdom continued in *Local 189* to discuss the inequities and disadvantages inherent in the creation of fictional seniority:

To begin with, requiring employers to correct their pre-Act discrimination by creating fictional seniority for new Negro employees would not necessarily aid the actual victims of the previous discrimination. There would be no guaranty that the new employees had actually suffered exclusion at the hands of the employer in the past, or, if they had, there would be no way of knowing whether, after being hired, they would have continued to work for the same employer. In other words, creating fictional employment time for newly-hired Negroes would comprise preferential rather than remedial treatment. The clear thrust of the Senate debate is directed against such preferential treatment on the basis of race.

416 F.2d at 995. Franks v. Bowman Transportation Co., *supra*, reinforced the reasoning of *Local 189* in this Circuit. Although the Supreme Court has issued a writ of certiorari for *Franks* so that the holding there will be reviewed, a contrary holding in *Franks* would not change the soundness of denial of fictional seniority relief to those who suffered no personal discrimination, as is the case here.

The reasoning of *Local 189* effectively anticipates the situation at hand. Plaintiffs, black employees laid off pursuant to a "last hired, first fired" provision in the collective bargaining agreement, allege that such a provision is not *bona fide* because it perpetuates the effects of the Company's previous discrimination in hiring. Inasmuch as none of plaintiffs have suffered individual discrimination at the hands of the Company, however, there is no past discrimination toward them which the current maintenance of the layoff system could possibly perpetuate.

The recitation of legislative history in Jersey Central Power & Light Co.

v. Local 327, IBEW, 508 F.2d 687 (3rd Cir. 1975), Waters v. Wisconsin Steel Works, 502 F.2d 1309 (7th Cir. 1974), *Local 189, supra,* and the opinion of the district court in this case, 369 F.Supp. 1227–1230, makes it unnecessary for us to review it here. It is quite apparent that, regardless of what that history may show as to Congressional intent concerning the validity of seniority systems as applied to persons who have themselves suffered from discrimination, there was an express intent to preserve contractual rights of seniority as between whites and persons who had not suffered any effects of discrimination.

In the *Waters* case, two individual employees brought action against their employer and union, alleging that certain employment practices had deprived them of their rights secured by 42 U.S.C.A. § 1981 and Title VII of the Civil Rights Act of 1964. On the issue of the employer's "last hired, first fired" seniority system, plaintiffs claimed that the system violated both § 1981 and Title VII in that it perpetuated alleged prior discriminatory policies and hiring practices of the defendants.

The district court in *Waters* held that the seniority system had its genesis in a period of racial discrimination and was thus violative of § 1981 and not a *bona fide* seniority system under Title VII.

On appeal, the Seventh Circuit reversed. Distinguishing a departmental seniority system from the employment seniority system under scrutiny in the *Waters* case, the court held that employer's seniority system was not of itself racially discriminatory and that it did not have the effect of perpetuating prior racial discrimination in violation of the strictures of Title VII. 502 F.2d at 1318. Quoting extensively from the legislative history of Title VII, the court held in *Waters* that an employment seniority system is a *"bona fide"* seniority system under Title VII, specifically Section 703(h), 42 U.S.C.A. § 2000e–2(h). Adopting the rationale of this Court in *Local 189,* that Title VII does not require that

a worker be granted fictional seniority or special privileges because of his race, the *Waters* court stated,

> Title VII speaks only to the future. Its backward gaze is found only on a present practice which may perpetuate past discrimination. An employment seniority system embodying the "last hired, first fired" principle does not of itself perpetuate past discrimination. To hold otherwise would be tantamount to shackling white employees with a burden of a past discrimination created not by them but by their employer. Title VII was not designed to nurture such reverse discriminatory preferences. Griggs v. Duke Power Co., 401 U.S. 424, 430–431, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971).

502 F.2d at 1320.

The question arose in a different factual context in *Jersey Central.* In *Jersey Central,* the employer, faced with the necessity of laying off a number of employees for economic reasons, sought a declaratory judgment pursuant to 28 U.S.C.A. §§ 2201, 2202, defining its rights and obligations under (1) a collective bargaining agreement between it and the unions and (2) a conciliation agreement among the EEOC, the employer, and the unions. The collective bargaining agreement provided for an employment seniority system which included the "last hired, first fired" principle. The conciliation agreement, while obligating the employer to institute certain changes in its employment practices and policies with regard to women and minority groups, did not contain express seniority provisions and did not expressly modify the seniority provisions of the collective bargaining agreement.

On appeal, the Third Circuit viewed the proceeding as one requiring the interpretation of contracts only and declined to consider the issue of past employment practices of either the employer or the unions. After an examination of the two agreements, the court in *Jersey Central* held that they did not con-

flict and that the conciliation agreement, in fact, incorporated the employment seniority provision of the collective bargaining agreement as to layoffs.

Having concluded that the conciliation agreement did not modify the employment seniority provision of the collective bargaining contract, the Third Circuit in *Jersey Central* turned to consider whether a seniority clause providing for layoffs by reverse order of seniority must be modified, under the general law of contracts, as being contrary to public policy and welfare. Looking to Title VII as Congress' formulation of public policy in the context of employment discrimination, the *Jersey Central* court stated that its reading of the statute revealed no statutory proscription of plant-wide seniority systems. Noting that Title VII authorizes the use of "*bona fide*" seniority systems, the court continued,

> While the legislative history of Title VII is largely uninstructive with respect to seniority rights, it is evident to us that Congress did not intend that a *per se* violation of the Act occur whenever females and minority group persons are disadvantaged by reverse seniority layoffs.

508 F.2d at 705. The court in the *Jersey Central* case held that a seniority clause providing for layoffs by reverse order of seniority is not contrary to public policy and welfare and, thus, is not subject to modification by court decree.

Being in agreement with the result in each of these cases, we hold that, in the case at bar, the use of employment seniority to determine the layoff of employees does not violate Title VII of the Civil Rights Act of 1964.

### Layoff Under § 1981

The failure of Title VII to proscribe an employment practice does not foreclose an attack under 42 U.S.C.A. § 1981. Sanders v. Dobbs Houses, Inc., 431 F.2d 1097 (5th Cir. 1970), cert denied, 401 U.S. 948, 91 S.Ct. 935, 28 L.Ed.2d 231 (1971), held that § 1981 applies to private employment discrimination and that the

enactment of Title VII did not constitute an implied repeal *in toto* of the application of § 1981 to such discrimination. *See* Alexander v. Gardner-Denver Co., 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). Furthermore, our decision in Guerra v. Manchester Terminal Corp., 498 F.2d 641 (5th Cir. 1974), establishes that § 1981 prohibits some employment practices that are not unlawful under Title VII. In *Guerra*, we held that § 1981 prohibits discrimination against aliens even though Title VII does not prohibit such discrimination under our decision in Espinoza v. Farah Manufacturing Co., 462 F.2d 1331 (5th Cir. 1972), aff'd, 414 U.S. 86, 94 S.Ct. 334, 38 L.Ed.2d 287 (1973).

Against the plaintiffs' claim of a § 1981 cause of action, however, defendants contend that Congress, by enacting Title VII, specifically § 703(h), intended, by implication, to repeal 42 U.S.C.A. § 1981, insofar as that statute would otherwise invalidate the use of employment seniority under the circumstances of this case. Relying on Posadas v. National City Bank, 296 U.S. 497, 56 S.Ct. 349, 80 L.Ed. 351 (1936), defendants assert that Congress' clear decision not to invalidate employment seniority systems necessarily repealed by implication any possible contrary construction of § 1981.

Plaintiffs respond that, in 1964, Congress could not constitutionally enact an immunity for plant seniority systems under § 703(h), where blacks were refused employment in the past. Citing Reitman v. Mulkey, 387 U.S. 369, 87 S.Ct. 1627, 18 L.Ed.2d 830 (1967), plaintiffs assert that, assuming plant seniority rules are racially discriminatory where blacks have been refused employment in the past, it would be beyond the constitutional powers of Congress to enact legislation which immunized this discrimination from legal attack.

We need not involve ourselves in this issue, however, in view of our decision that the seniority system does not discriminate against the plaintiffs in this

case. Section 1981 of 42 U.S.C.A. provides that "all persons . . . shall have the same right to make and enforce contracts . . . and to the full and equal benefits of all laws . . . as is enjoyed by white citizens . . . ." There is no violation of this statute here.

■ As demonstrated in our discussion under Title VII, the black plaintiffs received the identical employment benefits, terms and conditions as their white counterparts. The collective bargaining agreement was, in fact, color blind. Totally without regard to the terms of Title VII, the contractual seniority rights of the plaintiffs in this case do not run afoul of the dictates of § 1981. The layoff provision of the instant seniority system is not only facially nondiscriminatory; it does not perpetuate the effects of past discrimination as to these plaintiffs. When hired, these plaintiffs obtained the same contract rights as white citizens then hired. Blacks are guaranteed the same rights as whites under § 1981, not greater rights. Long v. Ford Motor Co., 496 F.2d 500, 505 (6th Cir. 1974).

In Waters v. Wisconsin Steel Works, 502 F.2d 1309 (7th Cir. 1974), the Seventh Circuit considered whether a seniority system providing for the layoff of employees on the basis of employment seniority violates § 1981 where that system allegedly "locks in" the effects of past discrimination, and reached a result consistant with the one we reach. The court in *Waters* summarily disposed of the § 1981 issue by stating in footnote 4,

> Having passed scrutiny under the substantive requirements of Title VII, the employment seniority system utilized by Wisconsin Steel is not violative of 42 U.S.C. § 1981.

502 F.2d at 1320 n. 4.

We hold, therefore, that the use of total employment seniority to establish the order of layoff of employees under the circumstances of this case does not violate 42 U.S.C.A. § 1981.

*Recall Under Title VII*

The legality of the recall provisions of the contract is somewhat more difficult as a conceptual matter, because of the present posture of the employment picture: waiting in the wings for reemployment prior to any blacks into the virtually all-white work force are 138 more whites, many of whom were hired during the time that the Company utilized racially discriminatory hiring practices. It is argued that regardless of the legality of the layoff system, the recall system is independently unlawful. The recall situation differs from the layoff, it is contended, because it relates to future vacancies, rather than present employment.

The argument fails as to these plaintiffs, however, for the same reasons that the argument against layoff under the facially neutral seniority system fails. The maintenance of a seniority system which provides for recall on the basis of total employment seniority does not perpetuate the effects of past discrimination against these plaintiffs. Inasmuch as the Company did not discriminate in its hiring practices against any of the plaintiffs, there is no past discrimination being perpetuated as to them. To force the Company to recall some of the plaintiffs before their senior white workers because other members of the black race, but not they, had been discriminated against would be to accord plaintiff employees preferential treatment solely on the basis of their race. Under the neutral system as presently applied, plaintiffs have the same contractual employment rights as their white co-workers. Such equality is, at once, the goal and the limitation of Title VII.

In Waters v. Wisconsin Steel Works, 502 F.2d 1309 (7th Cir. 1974), the Seventh Circuit examined a right to recall amendment to a collective bargaining agreement to determine if the amendment violated either Title VII or § 1981 as to two different black plaintiffs. The preferred white employees were bricklayers who had accepted severance pay in exchange for their contractual senior-

ity rights, including recall. At a later date, the collective bargaining agreement was amended to restore to these employee bricklayers their contractual seniority rights for purposes of recall. Three who had accepted the severance pay accepted the recall and returned to work. Two plaintiffs complained. One, a laid-off employee without contractual seniority, alleged that the amendment was discriminatory as to him because it advanced the bricklayers ahead of him on the *recall* list. The other, an applicant for employment, contended that the agreement was discriminatory as to him because it advanced the bricklayers ahead of him on the *hiring* list.

As to the laid-off plaintiff who was superseded on the recall list, the *Waters* court found the amendment in question to be discriminatory in effect and violative of Title VII and § 1981. The court stated,

> We reach such a conclusion due to the fact that Wisconsin Steel through its prior discrimination and its implementation of an employment seniority system occupied a racially precarious position—indeed, at the brink of present discrimination. A company policy according priority to white bricklayers who had accepted the benefits of severance pay would, in our view, project the company into the realm of presently perpetuating the racial discrimination of the past.

502 F.2d at 1321.

As to the new applicant plaintiff, however, the *Waters* court held that the amendment to the collective bargaining agreement had no discriminatory impact. The court concluded that a policy favoring recall of a former employee with experience, even though white, before considering a new black applicant without experience comports with the requirements of both Title VII and 42 U.S.C.A. § 1981. 502 F.2d at 1320.

Both plaintiffs and defendants contend that the decision of the court in the *Waters* case supports their respective arguments on the question of recall in the case at bar. In fact, however, the *Waters* decision does not precisely decide the question for either party on appeal. As to the argument of plaintiffs that seniority as a basis of recall violates Title VII where it "locks in" past discrimination, the *Waters* case is different factually from the case *sub judice* by the presence of the discriminatory amendment to the collective bargaining agreement. As to the defendants' argument, the decision of the *Waters* court that the recall system in that case had no discriminatory effect on a new job applicant might not apply with equal force to a situation where plaintiffs are laid-off employees with experience.

A thorough study of the cases cited by the parties to this appeal reveals that no federal appellate court has squarely considered the question of whether recall on the basis of total employment seniority violates Title VII on the ground that such a practice allegedly "locks in" past discrimination against blacks as a race. In other words, it perpetuates an all-white work force. Several Circuits, however, have examined recall practices under departmental seniority systems. In Williamson v. Bethlehem Steel Corp., 468 F.2d 1201 (2nd Cir. 1972), the Second Circuit reviewed a collective bargaining provision which provided that a laid-off employee would be recalled by departmental seniority for the first six months following layoff. Although the court sanctioned the use of departmental seniority as a mechanism of recall in the case of a "temporary" layoff, it remanded *Williamson* to the district court for a determination of how extended a layoff must be before it is no longer temporary. In remanding, the Second Circuit cited the opinion of this Court in United States v. Hayes International Corp., 456 F.2d 112 (5th Cir. 1972), to the effect that, in the case of an extended layoff, recall privileges which operate to the residual disadvantage of black workers may violate Title VII and thus be subject to judicial modification.

In *Hayes International,* we examined a recall system which was based on job

seniority. The system under scrutiny in *Hayes International* functioned in the following manner:

> If an employee in a "B" job is either laid off or remanned to a beginner job, he would be entitled to the "B" job before another beginner even though the other beginner was also qualified and more senior but had never held the "B" job. This is what is known as a remanning right. The recall rights are also similar.

456 F.2d at 118. In the context of a transfer program to allow the prior discriminatees to reach their rightful place, this Court stated that, while the recall rights appeared neutral on their face, the provisions had the effect of perpetuating a residual disadvantage to those senior black employees who were required to transfer to the lower classification in a line of progression, but who were also qualified to perform the higher jobs in that line. Accordingly, the *Hayes International* panel held that the recall and remanning system violated the provisions of Title VII when applied to those employees.

The factual situation in the case at bar is clearly distinguishable from those of the *Williamson* and *Hayes International* cases. In the instant case, the seniority system under attack provides for recall on the basis of total employment seniority, as required by those cases, and is in no way related to a job or departmental seniority system which adversely affects employees who have not yet attained their rightful place of employment. *Cf.* Pettway v. American Cast Iron Pipe Co., 494 F.2d 211 (5th Cir. 1974); Rowe v. General Motors Corp., 457 F.2d 348 (5th Cir. 1972); United States v. Jacksonville Terminal Co., 451 F.2d 418 (5th Cir. 1971), cert. denied, 406 U.S. 906, 92 S.Ct. 1607, 31 L.Ed.2d 815 (1972). Unlike those cases concerning the effect of present practices that perpetuate past discrimination against the challenging employees, we find no factual base to invalidate the seniority system of recall under consideration.

Even if it were to be considered discriminatory, however, the rationale of *Local 189, supra,* would insulate it from being an unlawful employment practice on the ground that it is a *bona fide* seniority system within the contemplation of § 703(h). Under *Local 189* and its progeny, a total employment system which accords white workers preference only over junior blacks on the basis of total employment is a *bona fide* seniority system under § 703(h), 42 U.S.C.A. § 2000e–2(h). The recall provision of the collective bargaining agreement here accords white workers preference only over junior blacks. Recall by employment seniority is a contractual right of every employee at the Company, just as layoff by employment seniority is a contractual possibility for all. Although the legislative history of Title VII is practically silent on whether such a system of recall would be exempt, as *bona fide,* from the purview of Title VII, there is no substantial difference between the layoff of employees pursuant to employment seniority and the recall of those employees on the same basis. Where each employee, regardless of race, is treated equally under a seniority system which does not have the effect of "locking in" past discrimination as to that employee, the system is a *bona fide* one which is exempt under § 703(h) from the reaches of Title VII.

Plaintiffs maintain that to allow the Company to recall employees under the provisions of the collective bargaining agreement is to sanction today the discrimination which the Company practiced prior to 1965. The argument is historical, not personal. Plaintiffs, who have never suffered discrimination at the hands of the Company, are in no better position to complain of the recall system than are the white workers who were hired contemporaneously with them.

We hold, therefore, that the use of total employment seniority to determine the order of recall of employees in this case does not violate Title VII of the Civil Rights Act of 1964.

*Recall Under § 1981*

It is unnecessary to consider at length the contention that the recall provision of the collective bargaining agreement violates 42 U.S.C.A. § 1981. The use of total employment seniority to establish the order of recall of employees affects each individual employee with equal force. Where a black worker has the same right to contract as does his white co-worker, the dictates of § 1981 are fulfilled. The "last fired, first re-hired" system of recall does not violate 42 U.S.C.A. § 1981 under the facts of this case.

Reversed and remanded.